## DOLL v. COMMISSIONER OF INTERNAL REVENUE.

### No. 12773.

Circuit Court of Appeals, Eighth Circuit.

April 24, 1945.

Rehearing Denied May 11, 1945.

Malcolm I. Frank, of St. Louis, Mo. (William M. Fitch, of St. Louis, Mo., on the brief), for petitioner.

Helen Goodner, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, Robert N. Anderson, and Louise Foster, Sp. Assts. to the Atty. Gen., on the brief), for respondent.

Before STONE, SANBORN, and THOMAS, Circuit Judges.

STONE, Circuit Judge.

This is a review of a decision by the Tax Court on claims for refund of parts of individual income taxes paid by Francis Doll for the years 1937, 1938 and 1939. Petitioner contends that included in his individual assessment for these years was the entire income of a business conducted as partnership in which he was but one member—his wife being the other partner. Petitioner urges error in the adverse finding of the Tax Court because the evidence proved a partnership and because a declaratory judgment of a State court that this partnership existed is binding upon the Tax Court. Logically, we examine these two issues in inverse order from that just stated.

I. Judgment of State Court.

After these claims for refund had been made, Mrs. Doll filed a petition in the Circuit Court of St. Louis County, Missouri, for a declaratory judgment to construe the partnership agreement and to determine her rights in the partnership business, assets, and profits. Petitioner answered admitting all material allegations of the petition. There was no controversy between the parties as to the subject matter of the suit, either before or after it was filed. The court entered judgment that the agreement constituted a partnership and that each of the parties was entitled to one-half of the income and assets, less amounts theretofore paid to either or to both jointly.

Petitioner contends that the Tax Court was bound to accept this judgment as determinative of the existence of the partnership; that the parties were entitled to share equally in the income therefrom; and that they should be taxed separately thereon. Respondent contends: (1) that this decision is not material because the question is who earned the income and whether this arrangement between petitioner and his wife affected their subsequent economic status for tax purposes; (2) that the decision is not binding because no real controversy existed between the parties thereto and, therefore, this was a consent judgment—if not collusive—not binding on the United States, not a party thereto; and (3) that the judgment was by an inferior State court.

We do not examine the issues as to the force of a judgment of an inferior court or as to whether this was a consent judgment or collusive or if either, its effect under the declaratory judgment law of Missouri or under the national revenue statutes. We omit this because we think this judgment is not decisive of this case. We have remaining the issue as to whether or not the existence of rights and of status so established controls the incidence of taxation under the applicable national revenue statutes. Broadly, this is the problem of when the incidence of national taxation depends upon State law and when it does not.

The successive revenue acts, as well as courts in construing and applying those acts, have recognized various legal relationships (such as trusts, partnerships, corporations, gifts, assignments, etc.) as sometimes determining or affecting the incidence of taxation. Usually, State law determines the creation and existence of legal relationships and their attendant rights, duties, obligations and incidents. This situation that national revenue laws sometimes recognize legal relationships and that State laws govern legal relationships has posed the fre-

quent issue of when the State law determines the incidence of national taxation and when it does not.

■ The general rules are: (1) that the plenary power of Congress to tax is not subject to State control[1] but (2) that Congress may choose its own criteria and make or not make State law control the application of its acts.[2] Thus it is the intention of Congress which governs (Helvering v. Stuart, 317 U.S. 154, 161, 63 S.Ct. 140, 87 L.Ed. 154).

■ In determining whether or not Congress intended State law to control, several tests have developed. Among these are: that State law does not control "unless the language or necessary implication" of the revenue statutory provision so requires;[3] whether, as to such provision, a uniform application of a nation-wide scheme of taxation would be interfered with if State law was the criterion[4]; and whether the purposes of the taxing act would be avoided or defeated by applying the State law.[5]

---

[1] Helvering v. Stuart, 317 U.S. 154. 161, 63 S.Ct. 140, 87 L.Ed. 154; Lyeth v. Hoey, 305 U.S. 188, 194, 59 S.Ct. 155, 83 L.Ed. 119, 119 A.L.R. 410; Burnet v. Harmel, 287 U.S. 103, 110, 53 S.Ct. 74, 77 L.Ed. 199; Farmers' Union Co-op. Co. v. Commissioner of Internal Revenue, 8 Cir., 90 F.2d 488, 492; Wholesalers' Adjustment Co. v. Commissioner of Internal Revenue, 8 Cir., 88 F.2d 156, 158; Mississippi Valley Trust Co. v. Commissioner of Internal Revenue, 8 Cir., 72 F.2d 197, 200.

[2] Same citations as in note 1.

[3] Helvering v. Stuart, 317 U.S. 154, 161, 63 S.Ct. 140, 87 L.Ed. 154; United States v. Pelzer, 312 U.S. 399, 402, 61 S.Ct. 659, 85 L.Ed. 913; Lyeth v. Hoey, 305 U.S. 188, 194, 59 S.Ct. 155, 83 L.Ed. 119, 119 A.L.R. 410.

[4] Putnam's Estate v. Commissioner of Internal Revenue, 65 S.Ct. 811; Estate of Rogers v. Helvering, 320 U.S. 410, 413, 414, 64 S.Ct. 172, 88 L.Ed. 134; Sanford's Estate v. Commissioner of Internal Revenue, 308 U.S. 39, 48, 60 S.Ct. 51, 84 L.Ed. 20; Lyeth v. Hoey, 305 U.S. 188, 194, 59 S.Ct. 155, 83 L.Ed. 119, 119 A.L.R. 410; Thomas v. Perkins, 301 U.S. 655, 659, 57 S.Ct. 911, 81 L.Ed. 1324; Burnet v. Harmel, 287 U.S. 103, 110, 53 S.Ct. 74, 77 L.Ed. 199; Weiss v. Weiner, 279 U.S. 333, 337, 49 S.Ct. 337, 73 L.Ed. 720; United States v. Childs, 266 U.S. 304, 309, 45 S.Ct. 110, 69 L.Ed. 299.

[5] Some of the citations in this footnote do not involve direct issues of application of State law but have to do with legal rights and legal relationships usually subjects of State law. Commissioner v. Court Holding Co., 65 S.Ct. 707; Commissioner v. Wemyse, 65 S.Ct. 652; Merrill v. Fahs, 65 S.Ct. 655, (last paragraph of majority opinion); Commissioner of Internal Revenue v. Harmon, 323 U.S. 44, 65 S.Ct. 103; Moline Properties v. Commissioner, 319 U.S. 436, 439, 63 S.Ct. 1132, 87 L.Ed. 1499; Helvering v. Stuart, 317 U.S. 154, 167, 63 S.Ct. 140, 87 L.Ed. 154; Helvering v. Safe Deposit & Trust Co., 316 U.S.

56, 62 S.Ct. 925, 86 L.Ed. 1266, 139 A.L.R. 1513, 58 note 1; Pearce v. Commissioner of Internal Revenue, 315 U.S. 543, 552, 62 S.Ct. 754, 86 L.Ed. 1016; Hormel v. Helvering, 312 U.S. 552, 559–560, 61 S.Ct. 719, 85 L.Ed. 1037; Harrison v. Schaffner, 312 U.S. 579, 581–583, 61 S.Ct. 759, 85 L.Ed. 1055; Helvering v. Horst, 311 U.S. 112, 120, 61 S. Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655; Morgan v. Commissioner of Internal Revenue, 309 U.S. 78, 80–81, 60 S.Ct. 424, 84 L.Ed. 585; Griffiths v. Commissioner of Internal Revenue, 308 U.S. 355, 357–358, 60 S.Ct. 277, 84 L.Ed. 319; Higgins v. Smith, 308 U.S. 473, 476, 477, 60 S.Ct. 355, 84 L.Ed. 406; United States v. Jacobs, 306 U.S. 363, 369, 59 S.Ct. 551, 83 L.Ed. 763; and note 12; Helvering v. National Grocery Co., 304 U.S. 282, 288, 58 S.Ct. 932, 82 L.Ed. 1346; Heiner v. Mellon, 304 U.S. 271, 279–281, 58 S.Ct. 926, 82 L.Ed. 1337; Morrissey v. Commissioner of Internal Revenue, 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263; Burnet v. Guggenheim, 288 U.S. 280, 289, 53 S.Ct. 369, 77 L.Ed. 748; Burnet v. Harmel, 287 U.S. 103, 110, 53 S.Ct. 74, 77 L.Ed. 199; Bankers Pocahontas Coal Co. v. Burnet, 287 U.S. 308, 310, 53 S.Ct. 150, 77 L.Ed. 325; Palmer v. Bender, 287 U.S. 551, 555, 53 S.Ct. 225, 77 L.Ed. 489; Botany Worsted Mills v. United States, 278 U. S. 282, 292, 49 S.Ct. 129, 73 L.Ed. 379; New York Life Ins. Co. v. Edwards, 271 U.S. 109, 119–120, 46 S.Ct. 436, 70 L.Ed. 859; Burk-Waggoner Oil Ass'n v. Hopkins, 269 U.S. 110, 114, 46 S.Ct. 48, 70 L. Ed. 183; Hecht v. Malley, 265 U.S. 144, 160, 161, 163, 44 S.Ct. 462, 68 L.Ed. 949; Y. M. C. A. v. Davis, 264 U. S. 47, 44 S.Ct. 291, 68 L.Ed. 558; Lederer v. Stockton, 260 U.S. 3, 43 S.Ct. 5, 67 L. Ed. 99; United States v. Field, 255 U. S. 257, 41 S.Ct. 256, 65 L.Ed. 617, 18 A.L.R. 1461; Merchants' L. & T. Co. v. Smietanka, 255 U.S. 509, 521, 41 S.Ct. 386, 65 L.Ed. 751, 15 A.L.R. 1305; Crocker v. Malley, 249 U.S. 223, 39 S.Ct. 270, 63 L.Ed. 573, 2 A.L.R. 1601; Von Baum-

■ Our immediate concern is (having income taxation in mind) with the third of these rules for construction of revenue acts—that having to do with the purposes of the taxing act. "The dominant purpose of the revenue laws [as to incomes] is the taxation of income to those who earn or otherwise create the right to receive it and enjoy the benefit of it when paid" (Helvering v. Horst, 311 U.S. 112, 119, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655) and this includes "any economic or financial benefit." Commissioner of Internal Revenue v. Smith, 324 U.S. 177, 65 S.Ct. 591. Substance and not form controls in applying income tax statutes [6] and "the realities of the taxpayer's economic interest, rather than the niceties of the conveyancer's art, should determine the power to tax." Helvering v. Safe Deposit & Trust Co. of Baltimore, 316 U.S. 56, 58, 62 S.Ct. 925, 86 L.Ed. 1266, 139 A.L.R. 1513 note 1.[7]

■ In view of the rules in the preceding paragraph and of the very broad scope given, in the various revenue acts (here section 22(a) of the 1936 Act, 26 U.S.C.A. Int.Rev.Code § 22(a), to the definition of gross income subject to taxation [8], the Supreme Court has stated general criteria as aiding in determining tax liability as to income derived from capital, from labor, and from combined capital and labor.[9] Since tax liability on income from capital is based on ownership, the criterion there has to do with possession of attributes of ownership by the taxpayer—such as control by (Harrison v. Schaffner, 312 U.S. 579, 580, 61 S.Ct. 759, 85 L.Ed. 1055; Helvering v. Horst, 311 U.S. 112, 119, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655; Helvering v. Clifford, 309 U.S. 331, 335, 60 S.Ct. 554, 84 L.Ed. 788; Corliss v. Bowers, 281 U.S. 376, 378, 50 S.Ct. 336, 74 L.Ed. 916) or benefits to him (Helvering v. Horst, 311 U.S. 112, 119, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655; Douglas v. Willcuts, 296 U.S. 1, 9, 56 S.Ct. 59, 80 L.Ed. 3, 101 A.L.R. 391). Where the income is from labor, a test is who "earned" the income (Helvering v. Horst, 311 U.S. 112, 119, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655; Lucas v. Earl, 281 U.S. 111, 114, 50 S.Ct. 241, 74 L.Ed.

bach v. Sargent Land Co., 242 U.S. 503, 518–521, 521–522, 37 S.Ct. 201, 61 L.Ed. 460.

[6] Commissioner of Internal Revenue v. Court Holding Co., 65 S.Ct. 707; Interstate Transit Lines v. Commissioner of Internal Revenue, 319 U.S. 590, 594, 63 S.Ct. 1279, 87 L.Ed. 1607; Moline Properties v. Commissioner of Internal Revenue, 319 U.S. 436, 439, 63 S.Ct. 1132, 87 L.Ed. 1499; Lyeth v. Hoey, 305 U.S. 188, 196, 59 S.Ct. 155, 83 L.Ed. 119, 119 A.L.R. 410; United States v. Phellis, 257 U.S. 156, 168, 42 S.Ct. 63, 66 L.Ed. 180; Eisner v. Macomber, 252 U.S. 189, 213, 40 S.Ct. 189, 64 L.Ed. 521, 9 A.L.R. 1570; Gulf Oil Corporation v. Lewellyn, 248 U.S. 71, 39 S.Ct. 35, 63 L.Ed. 133; Southern Pacific Co. v. Lowe, 247 U.S. 330, 337, 38 S.Ct. 540, 62 L.Ed. 1142.

[7] Harrison v. Schaffner, 312 U.S. 579, 581, 61 S.Ct. 759, 85 L.Ed. 1055; Helvering v. Clifford, 309 U.S. 331, 334, 60 S.Ct. 554, 84 L.Ed. 788; Estate of Sanford v. Commissioner of Internal Revenue, 308 U.S. 39, 43, 47, 60 S.Ct. 51, 84 L.Ed. 20; Helvering v. F. & R. Lazarus & Co., 308 U.S. 252, 255, 60 S.Ct. 209, 84 L.Ed. 226; Burnet v. Guggenheim, 288 U.S. 280, 287, 53 S.Ct. 369, 77 L.Ed. 748; Burnet v. Harmel, 287 U.S. 103, 111, 53 S.Ct. 74, 77 L.Ed. 199; Palmer v. Bender, 287 U.S. 551, 555, 557, 558, 53 S.Ct. 225, 77 L.Ed. 489; Burnet v. Leininger, 285 U.S. 136, 142, 52 S.Ct. 345, 76 L.Ed. 665; Corliss

v. Bowers, 281 U.S. 376, 378, 50 S.Ct. 336, 74 L.Ed. 916; Chase Nat. Bank v. United States, 278 U.S. 327, 334–335, 336, 338, 49 S.Ct. 126, 73 L.Ed. 405, 63 A.L.R. 388; Reinecke v. Northern Trust Co., 278 U.S. 339, 346, 348, 49 S.Ct. 123, 73 L.Ed. 410, 66 A.L.R. 397; Saltonstall v. Saltonstall, 276 U.S. 260, 261, 48 S.Ct. 225, 72 L.Ed. 565; Lederer v. Stockton, 260 U.S. 3, 8, 43 S.Ct. 5, 67 L.Ed. 99.

[8] "The broad sweep of this language [sec. 22(a)] indicates the purpose of Congress to use the full measure of its taxing power within those definable categories" (Helvering v. Clifford, 309 U.S. 331, 334, 60 S.Ct. 554, 84 L.Ed. 788). Commissioner of Internal Revenue, v. Smith, 324 U.S. 177, 65 S.Ct. 591; Helvering v. American Dental Co., 318 U.S. 322, 329, 63 S.Ct. 577, 87 L. Ed. 785; Helvering v. Stuart, 317 U.S. 154, 169, 63 S.Ct. 140, 87 L.Ed. 154; Helvering v. Bruun, 309 U.S. 461, 468, 60 S.Ct. 631, 84 L.Ed. 864; Helvering v. Wood, 309 U.S. 344, 347, 60 S.Ct. 551, 84 L.Ed. 796; Douglas v. Willcuts, 296 U.S. 1, 9, 56 S.Ct. 59, 80 L.Ed. 3, 101 A.L.R. 391; Irwin v. Gavit, 268 U.S. 161, 166, 45 S.Ct. 475, 69 L.Ed. 897; Eisner v. Macomber, 252 U.S. 189, 203, 40 S.Ct. 189, 64 L.Ed. 521, 9 A.L.R. 1570.

[9] These are the three sources of income. Eisner v. Macomber, 252 U.S. 189, 207, 40 S.Ct. 189, 64 L.Ed. 521, 9 A.L.R. 1570.

731; and see Commissioner of Internal Revenue v. Laughton, 9 Cir., 113 F.2d 103). Where the income is from combined labor and capital a test is the personality who or which "produced" the income. Burnet v. Leininger, 285 U.S. 136, 141, 52 S.Ct. 345, 76 L.Ed. 665.

A recurring situation is that involving a family group. Usually, a family group is an economic unit. Therefore, as to transactions within such a group "special scrutiny of the arrangement is necessary lest what is in reality but one economic unit be multiplied into two or more by devices which, though valid under state law, are not conclusive so far as § 22(a) is concerned." Helvering v. Clifford, 309 U.S. 331, 335, 60 S.Ct. 554, 84 L.Ed. 788.[10] The test applied in the Clifford case was whether a conveyance by taxpayer in trust for his wife had made "any substantial change in his economic position," 309 U.S. at page 336, 60 S.Ct. at page 557, 84 L.Ed. 788. The family relationship does not preclude arrangements between its members which will affect tax liability (Commissioner of Internal Revenue v. Branch, 1 Cir., 114 F.2d 985, 987, 132 A.L.R. 839) but it is "one of the elements to be considered by the trier of the facts." Commissioner of Internal Revenue v. Katz, 7 Cir., 139 F.2d 107, 110.

We have here a written instrument which is sufficient to create a partnership, both at common law and under Missouri decisions. Schneider v. Schneider, 347 Mo. 102, 146 S.W.2d 584; Stone v. Guth, 232 Mo.App. 217, 102 S.W.2d 738. The judgment here is at most an adjudication of what was never in doubt. The existence of such a contract is not determinative of this tax issue. There remains the impact of the test of an analysis of "all the circumstances attendant on its creation and operation."

Helvering v. Clifford, 309 U.S. 331, 335, 60 S.Ct. 554, 556, 84 L.Ed. 788. This test must be applied in view of the statutory scheme of taxation prescribed in § 22(a), Clifford case, 309 U.S. at page 334, 60 S.Ct. at page 556, 84 L.Ed. 788, and under the special scrutiny arising from the situation that only a husband and wife are parties to the contract. Clifford case, 309 U.S. at pages 335-337, 60 S.Ct. at pages 556, 557, 84 L.Ed. 788. The question posed for this analysis is whether this contract caused "any substantial change in his [petitioner's] economic position." Clifford case, 309 U.S. at page 336, 60 S.Ct. at page 557, 84 L.Ed. 788.[11] The answer is to be found in the pertinent facts. Determination of such fact situation is the exclusive province of the Tax Court and its decision must be upheld if based upon substantial evidence. This brings us to the second issue in this case which is whether or not there was substantial evidence to sustain the decision of the Tax Court.

II. The Evidence.

Prior to 1932, petitioner was engaged, in Cuba, in the business of selling shoes manufactured in the United States to dealers in Cuba. He operated under the name of F. Doll & Company which was a partnership composed of himself and his brother. His business was purely upon a commission basis paid by the manufacturers and he carried his business expenses. Early in 1932, he removed to St. Louis, Missouri, and became a United States citizen. There he continued his business selling to Cuban and Puerto Rican buyers. The business was conducted under the name St. Louis Trading Company. The bank account was in that name.

December 15, 1932, petitioner and his wife executed a written instrument[12],

---

[10] Hormel v. Helvering, 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037; George v. Commissioner of Internal Revenue, 8 Cir., 143 F.2d 837, 839; Rollins v. Helvering, 8 Cir., 92 F.2d 390, 394, 395.

[11] Petitioner relies upon various cases, principally Sharp v. Commissioner of Internal Revenue, 303 U.S. 624, 58 S. Ct. 748, 82 L.Ed. 1087; Blair v. Commissioner of Internal Revenue, 300 U. S. 5, 57 S.Ct. 330, 81 L.Ed. 465; Freuler v. Helvering, 291 U.S. 35, 54 S.Ct. 308, 78 L.Ed. 634; Helvering v. Rhodes' Estate, 8 Cir., 117 F.2d 509, and Holley v. General American Life Ins. Co., 8 Cir., 101 F.2d 172. These cases determine that where the issue is the existence of a legal status left by the tax-

ing statute to the determination of State law. the decision of a State court is controlling. Here, the real issue is whether a contract which has created such a legal status has effected "any substantial change in * * * economic position."

[12] "M. Fernandez            Antonio Doll
Puerto Rico Division      Cuba Division
                F. Doll
               Manager
     Saint Louis Trading Company
         1515 Washington Avenue
          Saint Louis, Missouri
             Dec. 15th, 1932
       —Partnership Agreement—
Mr. Francis Doll, of 429 Edgewood Drive, Clayton, Mo., heretofore, sole owner of the Saint Louis Trading Com-

drawn by himself, which is the basis of petitioner's claim that a partnership existed between his wife and himself. There is no dispute that this instrument continued, with such effect as it may have, from its execution onward.

As to "the circumstances attendant on its creation" (Clifford case, 309 U.S. at page 335, 60 S.Ct. at page 556, 84 L.Ed. 788), the evidence is as follows: Prior to 1932, the business had been confined to Cuban purchasers and was conducted under the name of F. Doll & Company (composed of petitioner and his brother Antonio) at Havana. Because of unfavorable Cuban political conditions, petitioner removed to St. Louis, Missouri, in January, 1932, and started business there under the name of St. Louis Trading Company. In view of existing Cuban political conditions, he looked for other markets. This led him to Puerto Rico. His wife had accompanied him on several trips to Puerto Rico and assisted him by writing up orders. He saw that it was practically impossible for him to cover Puerto Rico without help and it was then that he and his wife decided to go into partnership. It was because she was helping in the business. They drafted the partnership contract together, with no outside advice or help, and he did the typing. When this contract was executed, he had representatives in Cuba (Antonio Doll) and in Puerto Rico (M. Fernandez). The duties of these representatives do not appear clearly. Apparently, they continued after this contract.

As to the "circumstances attendant on its * * * operation" (Clifford Case, 309 U.S. at page 335, 60 S.Ct. at page 556, 84 L.Ed. 788) of the business during this contract, the evidence is as follows: The business was purely one of personal services for the earning of commissions in selling or causing the sale of shoes of St. Louis manufacturers to dealers in Cuba and Puerto Rico, petitioner bearing his own selling expenses. It was conducted in one of two ways dependent on whether the buyer came to St. Louis or was contacted in Cuba or Puerto Rico by petitioner or the local representative.

If the buyer came to St. Louis, he was taken to the sales department of the manufacturer where the sales were effected. During the sojourn of the buyer in St. Louis, he was entertained and his comforts and needs looked after. When petitioner was in St. Louis, he attended to this contacting of buyer and manufacturer while both he and Mrs. Doll looked after the social features. There is evidence that this entertainment of buyers was a recognized feature in this sort of trade. Certain business courtesies were extended the buyers— such as advancing money for payment of other goods purchased by a buyer from St. Louis firms who were not familiar either with the export trade or with the credit standing of the buyer. These various outside activities were obviously to obtain or retain the good will of the buyer as a client. When petitioner was absent from St. Louis, Mrs. Doll would take the buyers to the manufacturers and attend to the entertainment. He would make trips to Cuba and Puerto Rico to sell shoes there. He would

pany, with sales offices at the Paul Brown Building, St. Louis, Mo. agrees to take as partner in his bussiness, to his wife, Mrs. F. Doll, residing at the same address of the former owner and founder of the firm.

Mrs Francis Doll, accepts to join the partnership of his husband in the Saint Louis Trading Company enterprise,

Nature of this bussiness.

To sell on strictly commission basis, shoes made by American manufacturers for Export Trade.

Profits, Losses, Asets and Liabilities.

That both interested parties are to participate equaly, on the profits, losses asets and liabilities derived from this bussiness.

Management

That Mr Francis Doll, will undertake the management of this bussiness, to do as he sees fit, for the improvement of same, with full authority to apoint agents or representatives in foreign territories. In case of death, of Mr. Francis Doll Mrs F. Doll, (his wife) will then, undertake the same authority in regard to the management of the bussiness, and it will be her privilege then, to make the necessary apointments to continue this bussiness.

Income Tax

Federal and State Income Taxes, should be paid yearly to the Government on the Net Income and as per Inventory taken every year by the Saint Louis Trading Co. and as provided by the Law.

Francis Doll

"Signed ————————
Cornelia M. Doll."

"Signed ————————

take manufacturer's samples and from them make sales and send orders to the manufacturer. Several times Mrs. Doll accompanied him on these trips.

The commissions were paid by the shoe manufacturers on completed sales to customers brought by petitioner, or Mrs. Doll when he was absent from St. Louis, or on sales made by petitioner in Cuba and Puerto Rico. Such selling arrangements existed with several St. Louis shoe manufacturers and, with one exception, under verbal agreements as to commissions. The one written contract was with "F. Doll" and dated July 1, 1938. One verbal contract was with the St. Louis Trading Company which the manufacturer understood was a partnership composed of petitioner and Mrs. Doll. While it is not entirely clear, it seems that most of these contracts were with petitioner. All commissions were paid by check. Such checks were variously issued to F. Doll, Francis Doll, Frank Doll or St. Louis Trading Company. However payable, petitioner, with one exception, endorsed these checks as drawn adding "St. Louis Trading Co. By F. Doll" and deposited in that bank account.

Mrs. Doll kept the books and files. The only account book was in the nature of a cash book. This book showed income (commissions, dividends and interest) on one page with all expenditures covered by checks on the opposite page. The entries included not only business transactions but all personal transactions of each of them which were covered by checks. The expenditure page had three columns headed, respectively, "to Francis Doll, personal," "to Cornelia M. Doll, personal" and "to Francis Doll and Cornelia M. Doll, jointly" —the last being for joint business expenditures. There was no entry showing or segregating the share of each in a partnership. Mrs. Doll was to get a salary of $200 monthly.[13] No specific sum was accorded petitioner who seems to have drawn such sums as he desired for personal use.

An office was maintained and telephone listed as "St. Louis Trading Company." The assets consisted of office furniture and files and money in the bank account. A bank account was opened in January, 1932, in the name of St. Louis Trading Company.

Mrs. Doll had an individual bank account. Petitioner had no separate account except in those instances where he handled funds of buyers for outside purchases of other goods or to pay freight charges thereon. At all times, he seems to have drawn on the company account both for business and personal purposes. At first, Mrs. Doll checked against the company account but this was found unsatisfactory and thereafter all checks, even to her, were drawn by petitioner.

Neither petitioner nor his wife were familiar with income tax laws or requirements. For the tax years involved (1937, 1938 and 1939), a bookkeeper, not an expert accountant, made out the separate returns executed by petitioner and his wife. The returns for petitioner were made out by "Francis Doll, trading as St. Louis Trading Co." For 1937 and 1938, his items of income returned were under "Interest on bank deposits, notes, mortgages, etc." and "Income (or loss) from business or profession." For 1939, the "Interest" item was returned but instead of "Income (or loss) from business or profession" the return was for "Salaries and other compensation for personal services." Under the "Income (or loss) from business or profession" for 1937 and 1938 and under "Salaries or other compensation for personal services" for 1939, was set out the entire amount of income from this business (amounting in 1937 and 1938 to over $12,000 and in 1939 to nearly $14,000). Mrs. Doll returned separately only the $2,400 salary as her income. Early in 1940, petitioner consulted an expert accountant in connection with a claim that he was liable for Social Security taxes. The examination of the business by this accountant brought to his attention the agreement between petitioner and his wife. On the assurance of an attorney that the agreement constituted a partnership, the accountant prepared amended returns for 1937, 1938 and 1939 on a partnership basis and corresponding refunds were sought by petitioner. It is denial of these refunds which is involved here.

Mrs. Doll contributed no capital. She had no direct contracts with any manufacturers. Some of them did not know her. When she took customers to the manufacturers in the absence of petitioner, she

---

[13] The testimony of petitioner as to the origin of this salary was "When we found my wife had to work in the trade while I was on the road and take care of costs—she had to do the bookkeeping and all—we decided she should have a salary, to which we agree of $200.00."

merely accompanied them and took no part in the selling.

Whether a partnership exists for federal tax purposes must depend in each case on its particular facts.[14] If there is "a rational basis" for the conclusion of the Tax Court, that conclusion is binding here. Dobson v. Commissioner of Internal Revenue, 320 U.S. 489, 501, 64 S.Ct. 239, 88 L.Ed. 248. Where the evidence is conflicting or where the facts are undisputed and fair-minded men may honestly draw different conclusions therefrom, the conclusion reached by the Tax Court is binding. Tyson v. Commissioner of Internal Revenue, 8 Cir., 146 F.2d 50, 54. Considering this restricted field for review by this court, the intimate family relationship here and the burden of proof upon petitioner (Phillips v. Dime Trust & Safe Deposit Co., 284 U.S. 160, 167, 52 S.Ct. 46, 76 L.Ed. 220), we cannot say that the above evidence leaves no "rational basis" for the conclusion reached by the Tax Court. The manner of operation of this business preceding and during the years of this contract was consistent with a conclusion that this contract did not make "any substantial change in his [this petitioner's] economic position."

The decision of the Tax Court is affirmed.

[14] United States v. Pierce, 8 Cir., 137 F.2d 428, 431, 148 A.L.R. 1228. Compare two cases in the Tenth Circuit, involving family partnerships, which reached opposite conclusions: A. R. Losh & Jennie C. Losh v. Commissioner of Internal Revenue, 145 F.2d 456, and Armstrong v. Commissioner of Internal Revenue, 143 F.2d 700.