## KOHL v. COMMISSIONER OF INTERNAL REVENUE.

### No. 13673.

United States Court of Appeals
Eighth Circuit.

Nov. 12, 1948.

Rehearing Denied Dec. 6, 1948.

Tyrrell M. Ingersoll of Elliott, Shuttleworth & Ingersoll, all of Cedar Rapids, Iowa, and Charles T. Akre of Miller & Chevalier, all of Washington, D. C., for petitioner.

Theron Lamar Caudle, Asst. Atty. Gen., George A. Stinson, Ellis N. Slack, A. F. Prescott, Robert M. Weston, and Louise Foster, Sp. Assts. to Atty. Gen., and Charles Oliphant, Chief Counsel, Bureau of Internal Revenue, of Washington, D. C., for respondent.

Before GARDNER, Chief Judge, and JOHNSEN and COLLET, Circuit Judges.

GARDNER, Chief Judge.

This matter is before us on petition to review a decision of the Tax Court which held petitioner liable for a deficiency in income taxes for the taxable year 1941. The basic facts are not in dispute; neither is there any dispute as to the amount of the tax deficiency if such deficiency is to be determined against petitioner.

From 1933 to 1941, petitioner Otto A. Kohl was the sole owner of Bupane Gas Company, an unincorporated enterprise, with its principal place of business at Cedar Rapids, Iowa. The name Bupane Gas Company was simply a trade name under which petitioner was transacting business. For the purpose of convenience we shall refer to it as an entity. It bottled, sold and distributed liquid petroleum gas · for domestic use in several states. Its assets included land, buildings, furniture, manufacturing machinery, trucks, automobiles, steel cylinders and utilization equipment. As of April 30, 1941, its property had a net book value of $90,355.05.

At the times here in question petitioner's family consisted of his wife and three minor children, the oldest of whom was his

son, then seventeen years of age and attending college. Petitioner had in his employ Clark Van Meter and Marvin M. Cobb, both college graduates and both trained by petitioner to assume positions of responsibility in the Bupane business. They had been in his employ since 1935 and 1936 respectively. In the early part of 1941 Van Meter was designated general manager of Bupane Company and Cobb was designated as comptroller of the company. Subsequent to the installation of these men in their respective positions, petitioner devoted much of his time to other business interests.

Under date April 21, 1941, petitioner executed a trust agreement for the benefit of his wife and minor children, naming Van Meter and Cobb as trustees, and also naming petitioner's son who was to become a co-trustee upon his attaining the age of twenty-one years. The trust agreement did not identify any property but provided that petitioner would convey and assign certain property irrevocably to the trustees who were given discretion to pay up to 25 per cent of the income to petitioner's wife and to pay the balance in equal shares to his children, or to accumulate the income in a general fund for the benefit of each of the children and their survivors. The trustees were given control and management of the trust property, except that they might not make any sale, investment or re-investment during petitioner's lifetime without his written approval. The agreement contained numerous other provisions not here deemed material.

On April 30, 1941, petitioner entered into an agreement with Van Meter and Cobb, in their capacity as trustees, by which petitioner and the trustees agreed to engage in and carry on the business that had theretofore been owned and carried on by petitioner under the name of Bupane. By the terms of this instrument petitioner purported to sell to the trustees "a forty-nine one hundredths interest in the business and all of the property, real and personal, of every kind and description" which the petitioner then owned and used in connection with the business conducted and carried on by him under the name of Bupane Gas

Company, for the agreed price of $44,-273.97, and the trustees agreed to buy the property so described and to pay the price which was to be evidenced by a promissory note. The note, however, was to be paid "from that portion of the net profits after paying all operating costs and expenses derived from the conduct of the business by said company, and that first party (petitioner) is limited in his right to demand payment of either principal or interest on said note except that the same may be derived and is available from said net income earned on the interest of second parties (trustees) in said business and in the conduct thereof." The agreement contained provision that the business to be carried on should "include the right to own, buy and sell real estate, to own, buy and sell personal property of all kinds, including liquified petroleum gases and all appliances for using the same, either at wholesale or retail, and for cash or credit, as may be deemed proper, and to rent or lease either real or personal property, and enter into such contracts for rentals or leasing as may be deemed proper and necessary to protect and promote the rights and interests of said company."

The agreement also contained provision that the petitioner "has and is hereby given the right to determine all questions of buying or selling either real or personal property, or renting the same, or any part thereof, and pledging the credit of the Company whenever he deems it necessary, in the exercise of his judgment and discretion necessary and proper to do so, and to determine credits to be extended by the Company in the carrying on and conduct of its business and the pledges of credit to be taken by the Company to secure any credits extended in order to preserve the rights and protect the interests of the Company, and that whenever a question arises about which there is a difference of opinion, as between or among the parties hereto, the ultimate determination of the First Party as to the course to be pursued in any such matter, shall be final and binding upon all of the parties hereto." The agreement contained provision that the petitioner named in the agreement as "first party," "has and is

hereby given the right to determine the number of and who shall be the employees of said Bupane Gas Company, and the compensation to be paid to each and all of said employees at any time during the period covered by this contract."

Following the execution of this agreement entries were made in the books of the Bupane Gas Company reflecting the transaction, and Bupane was registered as a trade name for the petitioner and the trustees. Net profits for the year 1941 were reported and the taxes on the income were paid by Bupane on behalf of the trust. The note given by the trustees as evidencing their purchase of the 49 per cent interest in Bupane was paid by Bupane on behalf of the trustees in three installments. A bank account in the name of the trust was first opened in February, 1944, and monthly disbursements to that account were made by Bupane beginning February 28, 1944, and the first distribution to the trust beneficiaries was made in 1946, in the form of paid-up life insurance for the beneficiaries. Van Meter and Cobb each received $2,000 per annum trustees' fees in the years 1944 to 1946, inclusive. Van Meter was paid a salary of $2850 in 1941 and $3600 in 1942 through to 1944, while Cobb was paid a salary of $2400 in the years 1941 to 1944, and a salary of $4200 in 1946. These salaries were paid to them as employees. Petitioner filed a partnership return in the name of Bupane for the nine months' period May 1, 1941 to January 31, 1942, that being the fiscal year, allocating 51 per cent of the income to the petitioner and 49 per cent of the income to the trustees.

The Commissioner introduced no evidence but submitted the case on the testimony produced by petitioner. The court made findings, and conformable to the findings concluded as a matter of law that the net income from the business conducted under the trade name of Bupane Gas Company for the eight months ending December 31, 1941, was taxable to the petitioner, and that for tax purposes the petitioner and the trustees for his wife and minor children should not be recognized as a partnership doing business under the name of Bupane Gas Company.

In seeking to set aside the decision of the Tax Court, petitioner contends: (1) That the partnership involved was a valid partnership, and hence, petitioner was taxable only upon 51 per cent of the income of the partnership; (2) that petitioner did not dominate or control the trust, and hence, there was no basis for taxing any income of the trust to him; (3) that the findings and conclusions are contrary to the undisputed evidence; (4) that the conclusions of law of the Tax Court are contrary to the findings of fact; (5) that the Tax Court acted arbitrarily and in violation of the constitutional rights of petitioner in the taxation of the trust income to the petitioner; (6) that the Commissioner, in the trial of the proceedings, failed to assume or meet the burden of proof and that Tax Court erred in holding that the burden was upon petitioner; (7) the Tax Court was without power to exclude petitioner's witnesses from the courtroom during the trial; (8) the Tax Court erred in admitting hearsay testimony or other testimony which was incompetent.

Petitioner assails the findings of fact as not being sustained by the evidence. As the action is one tried without a jury, the findings should not be set aside unless clearly erroneous, due regard being given to the opportunity of the trial court to judge of the credibility of the witnesses, Rule 52 (a) Rules of Civil Procedure, 28 U.S.C.A. This rule, however, does not make the findings conclusive in the appellate court. It has recently been held by the Supreme Court that it was the intention, in actions tried without a jury, to make applicable the prevailing equity practice and that the appellate court may reverse findings of fact where "clearly erroneous." United States v. United States Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 542. In that case the court said:

"The practice in equity prior to the present Rules of Civil Procedure was that the findings of the trial court, when dependent upon oral testimony where the

candor and credibility of the witnesses would best be judged, had great weight with the appellate court. The findings were never conclusive, however. A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."

See, also: State Farm Mutual Automobile Ins. Co. v. Bonacci, 8 Cir., 111 F.2d 412; Aetna Life Ins. Co. v. Kepler, 8 Cir., 116 F.2d 1.

The findings are, however, presumptively correct and should not be set aside unless "clearly erroneous." There is no dispute as to the facts as they were proven by the petitioner, but it is claimed that the inferences drawn from these undisputed facts were not warranted. Whether or not the alleged partnership was entitled to recognition as a legal entity under the state law is not controlling. Poplar Bluff Printing Co. v. Commissioner, 8 Cir., 149 F.2d 1016; Durwood v. Commissioner, 8 Cir., 159 F.2d 400; Doll v. Commissioner, 8 Cir., 149 F.2d 239. In Durwood v. Commissioner, supra, we said [8 Cir., 159 F.2d 403]:

"So far as the federal income tax law is concerned, an association for purposes of business by members of a family, even though recognized as valid as a partnership by state law, is not to be treated as such where the taxpayer for the purpose of a reduction in his income taxes, shifts some of his property to other members of his family while remaining in control of its operation. The vice of such an arrangement consists of the attempt to shift income from the taxpayer to his near relatives without any significant economic change."

In the instant case, all the property involved in producing the income under consideration was confessedly at one time owned by the petitioner. He conveyed 49 per cent of this property to trustees for members of his family. The members of the family paid nothing for this transfer. True, the trustees in form gave a promissory note but the contract provided that the note should be paid only from the earnings of the property and business, and it was so paid. The beneficiaries, therefore, contributed nothing to capital. Neither did the members of the family perform any services contributing to the control or management of the business. The business was being conducted before the creation of the so-called partnership under the general management of the petitioner assisted by his employees Van Meter and Cobb and it was conducted subsequent to the creation of this partnership in substantially the same manner. As has been noted, the petitioner retained the right to determine the course to be pursued and this determination was binding upon all the parties. He retained the right to determine the number and personnel of the employees and the compensation to be paid them. The trustees of the trust estate could "make no sale, investment or reinvestment for the account of the trust estate unless they shall first secure the written approval of the trustor." Petitioner completely dominated both the trust estate and the partnership.

While there is no doubt that a partnership, even for tax purposes, may legally be entered into by members of a family, yet such a transaction is always subject to scrutiny. Commissioner v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670, 164 A.L.R. 1135; Lusthaus v. Commissioner, 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679; Doll v. Commissioner, supra. As said in Commissioner v. Tower, supra [327 U.S. 280, 66 S.Ct. 537]:

"There can be no question that a wife and husband may, under certain circumstances, become partners for tax, as for other, purposes. If she either invests capital originating with her or substantially contributes to the control and management of the business, or otherwise performs vital additional services, or does all of these things she may be a partner as contemplated by 26 U.S.C., §§ 181, 182, 26 U.S.C.A. Int.Rev.Code, §§ 181, 182. * * * But when she does not share in the management and control of the business, contributes no vital additional service, and where the husband purports in some way to have given her a partner-

ship interest, the Tax Court may properly take these circumstances into consideration in determining whether the partnership is real within the meaning of the federal revenue laws."

The trustees had been petitioner's salaried employees prior to the partnership agreement and they continued to be salaried employees, performing substantially the same services with reference to the same enterprise, subsequent to the partnership agreement. The trust estate did not open a bank account for some three years after the partnership agreement was entered into and did not make any distribution to the beneficiaries until some five years after the creation of the trust and this was in the form of paid-up life insurance. The admitted facts and surrounding circumstances as disclosed by the record were such as to warrant the Tax Court in concluding that the purpose dominating the entire plan was to shift some of the taxpayer's property to members of his family with a view of reducing his income tax, while he remained in control of the property's operations. The partners have no community of interest in the profits and losses. These profits, if any, go to the taxpayer and his family, and Van Meter and Cobb continued to draw such salaries as petitioner may consent to pay them. Petitioner determines who shall be the employees and he also determines their compensation. What is said in Economos v. Commissioner, 4 Cir., 167 F.2d 165, 167, is here apposite. It is there said:

"A gift of an interest in a family business, whether absolute or in trust, which makes no real change in the economic situation of the group or in the control or management of the business will not reduce the obligations of the donor to account for and pay income tax on the earnings of the enterprise to the same extent as before the gift was made."

Complaint is made that the Tax Court excluded certain of petitioner's witnesses while others were testifying. This was within the discretion of the court and no prejudice is shown nor claimed.

We have considered the other contentions of petitioner and find them wholly without merit. The decision of the Tax Court is therefore affirmed.