**YIANNIAS v. COMMISSIONER OF INTERNAL REVENUE.**
No. 14057.

United States Court of Appeals
Eighth Circuit.
Feb. 14, 1950.

Francis J. O'Connor, Dubuque, Iowa, for petitioner.

Harry Marselli, Sp. Asst. to the Atty. Gen. (Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, Helen Goodner and Virginia H. Adams, Special. Assistants to the Attorney General, on the brief) for respondent.

Before GARDNER, Chief Judge, and WOODROUGH and RIDDICK, Circuit Judges.

GARDNER, Chief Judge.

Petitioner seeks review of the decision of the Tax Court determining a deficiency in his income taxes for the calendar year 1943. The basic facts out of which this controversy arose, as found by the Tax Court, may be briefly stated.

Petitioner filed a joint return with his wife, Stella, for the year 1942, but filed a separate return for 1943. He held a lease on a theater building in Dubque, Iowa, known as the Avon Theater. On Septem-

ber 1, 1937, as lessee, he joined in an agreement with the lessee of the Singer-Dubuque Corporation and the owner of Grand Opera House, Inc., by the terms of which the owners and operators of these theaters agreed to operate four theaters at Dubque, Iowa, under joint management for a period of six years commencing September 4, 1937, under the trade name of Associated Theaters. The agreement provided that a salary of $125.00 per month should be paid petitioner and a salary of $75.00 per week should be paid to John H. Maclay, these expenditures to be considered as operating expenses of the joint operation and that the net profits were to be divided as follows: petitioner, 28 per cent; Singer-Dubuque Corporation, 20 per cent; Grand Opera House, Inc., 52 per cent. The respective parties were to pay the rentals called for in their lease, and Grand Opera House, Inc., was to furnish the Grand and Strand Theaters free of rent. The management was to be in the hands of representatives of the contracting parties and unanimous consent of these three was required to establish a policy in relation to the management of the theaters. The agreement was extended for an additional five year period commencing September 4, 1943. Petitioner performed services for Associated Theaters and was paid the salary agreed upon.

On December 15, 1942, petitioner and his wife executed a document referred to in the record as an assignment, by the terms of which petitioner in form assigned to his wife, Stella, the leasehold which he held on the theater building known as the Avon Theater, "together with all rights of the lessee or tenant granted in said lease except the right to payment of the deposit of $5,000 and the interest thereon, which right he reserves to himself." Petitioner's wife covenanted not to assign or underlet the lease and "to employ the said James Yiannias as general manager of the Theater until the termination of said leasehold * * *." The lessor of the premises leased by petitioner gave his consent in writing to the assignment, with the proviso that "this license and consent is restricted to this particular assignment and save as

aforesaid the covenant in said lease against assigning and subletting shall remain in full force and effect. It is understood that the said James Yiannias is in no manner released from his obligation as lessee and tenant under the said lease." On December 31, 1942, petitioner and his wife gave written notice to Singer-Dubuque Corporation and Grand Opera House, Inc., of his transfer and assignment to his wife, Stella.

During the period from September 1, 1937 to December 31, 1942, the agreement as to joint operation was carried out except that no service or representative in the operation of Associated Theaters was furnished by Singer-Dubuque Corporation. After December 31, 1942, and during the year 1943, the theaters were operated and managed in substantially the same manner as before. Petitioner's duties were substantially the same except that the income which previously had been distributed to him was thereafter credited to the account of his wife, Stella. His wife performed no services for the enterprise prior to 1943. She contributed no capital, nor did she perform any vital services for the business during the year 1943, but the business was carried on as in prior years. She did not maintain an office but stayed at home with her small children.

In 1943 Maclay was secretary of Grand Opera House, Inc., and a salaried employee of Associated Theaters. Petitioner consulted him with reference to withdrawing from the Associated Theaters and Maclay, on behalf of Grand Opera House, Inc., consented. No new agreement was entered into when petitioner made the assignment and Maclay was not concerned about petitioner substituting Stella as a participant in the pool arrangement because it was agreed before Maclay consented thereto that petitioner had no intention of ceasing to give his services to Associated Theaters. Maclay was petitioner's superior in 1943 and petitioner took advice and instructions from him. Petitioner continued in the same capacity, performing substantially the same services as before 1943 so far as the group of theaters was concerned.

Petitioner had had numerous stays in hospitals and sick spells at home and had been rejected for life insurance for physical reasons four or five times.

From these basic facts the court concluded that for tax purposes Mrs. Yiannias should not be recognized as being a partner of Associated Theaters, but that the income arising from the operation of these theaters was that of petitioner. The correctness of this conclusion is challenged by petitioner in his petition to review the Tax Court's decision.

A taxpayer has the right to avoid or decrease the amount of his income taxes by any means which the law permits. If, however, the motive is to avoid or decrease the tax the transaction should be carefully scrutinized. Morsman v. Commissioner, 8 Cir., 90 F.2d 18, 113 A.L.R. 441. The court may look at actualities and if the transaction is found to be a subterfuge it may be disregarded for taxation purposes as substance rather than form must prevail. If the arrangement or transaction is in fact an attempt to shift income from the taxpayer to a near relative without any significant economic change in taxpayer's business it can not be permitted to stand. In examining such transactions the issue to be determined is "who earned the income." Commissioner v. Tower, 327 U.S. 280, 66 S.Ct. 532, 537, 90 L.Ed. 670, 164 A.L.R. 1135. It is, however, contended in this case that the reason for the formal transfer of the petitioner's lease to his wife was his failing health. This contention seems not seriously to have impressed the Tax Court but the contention is here renewed. We have examined the testimony and think the finding of the court on this issue can not be said to be clearly erroneous. It appears that petitioner has not been incapacitated by ill health at any time since December, 1942. The evidence as to when he was incapacitated is very indefinite as it covers a period from 1939 to 1942. We think the court was warranted on the record in finding and believing that the motive for this transfer was to decrease petitioner's income tax and hence the transaction must be carefully scrutinized.

The income was that earned by the Associated Theaters. It was confessedly, up to the time of the execution of this assign-

ment, the income of petitioner. The property from the operation of which the income resulted was contributed by petitioner. The Association had a special property right in his lease because in the agreement between the picture show houses he was not at liberty to transfer it, at least without the consent of his associates, and neither was he at liberty to transfer without the consent of the lessor.

It is important, we think, to consider what changes were effected by the assignment of this lease. The lease contained provision that it should not be assigned in whole or in part without the written consent of the landlord. The lessor or landlord consented to the assignment with the proviso "that this license and consent is restricted to this particular assignment and save as aforesaid the covenant in said lease against assigning and subletting shall remain in full force and effect. It is understood, that the said James Yiannias is in no manner released from his obligation as lessee and tenant under the said lease." The relation of landlord and tenant therefore continued and petitioner was relieved of none of the covenants contained in the lease. Under these covenants petitioner was bound to pay a rental of $3600 a year in monthly installments. He was bound to pay all taxes and assignments of whatever nature, including special assessments, that might be levied, imposed or assessed upon the property. He was obliged, under the terms of the lease, to keep the building and personal property covered by the lease insured in the name and for the benefit of the landlord for not less than 90 per cent of the cost of construction or replacing the same. In the event of destruction or damage by fire or tornado petitioner agreed to repair, rebuild or replace same, applying the proceeds of insurance to defray the cost. Under the covenants of the lease he agreed to commit no waste on the premises and to keep and maintain same in good state of repair, both inside and outside, at his own cost and expense. Under the provisions of the lease he was required to deposit with the landlord the sum of $5,000 as security for the performance of the covenants and conditions of the lease and in the event of the termination of the lease for default or breach of covenant on the part of the tenant the sum should be retained by the landlord as liquidated damages. This so-called assignment did not rid petitioner of any of his obligations and we think it can not be considered an assignment of the lease. The landlord declined to accept Mrs. Yiannias as a tenant. She therefore had no lease and by this same token petitioner remained the lessee. Not being the owner of the lease she contributed nothing to the capital of the partnership. The contribution of this lease to the partnership continued to be petitioner's. What petitioner's wife secured by this transfer, if valid, was the right to collect the income arising from the property with no obligation to pay rent, insurance, upkeep, or any expense in connection with the maintenance of the property and lease. It remained the obligation of petitioner to keep the lease in full force and effect by payment of the rent and complying with the covenants of the lease. In the final analysis this purported transfer, if we regard substance rather than form, amounted simply to a transfer of the income arising from the property.

The purpose and intent of the income tax law is taxation to those who earn or otherwise create the right to receive income and a taxpayer may not avoid liability for income tax on his income by assigning the right to receive it. Commissioner v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898; Doll v. Commissioner, 8 Cir., 149 F.2d 239; Harrison v. Shaffner, 312 U.S. 579, 61 S.Ct. 759, 85 L.Ed. 1055; Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655. But if it could be held that this assignment as between the parties thereto had the effect of divesting petitioner of his rights and liabilities arising therefrom, it would not necessarily substitute petitioner's wife as a member of the association or partnership producing the income. There was no new agreement of association. The wife contributed neither capital nor vital service to the business, while petitioner continued in control in the same capacity as he had been before the alleged transfer and the partnership or association was run precisely as it had been

before the alleged assignment. The consent of Maclay, representing one of the associates, to the formal withdrawal of petitioner from the partnership was with the understanding that petitioner should continue to give his services to the business so that the partnership could continue without any real change. The wife had no contract with her alleged associates; she maintained no office, but stayed at home with her small children, while petitioner continued to operate the theaters and handle the employees as he had done before the assignment. There was no intention that petitioner's wife should become a real associate or partner and the Tax Court found that "there was no consent to any real substitution of the wife for petitioner in the operating partnership." Commissioner v. Tower, supra; Commissioner v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210; Burnet v. Leininger, 285 U.S. 136, 52 S.Ct. 345, 76 L.Ed. 665; Kohl v. Commissioner, 8 Cir., 170 F.2d 531. Under the circumstances disclosed by this record we think petitioner was properly held liable for the income taxes on the income from Associated Theaters.

It remains to consider the contention of petitioner that if the decision is affirmed with respect to attributing the income arising from the operation of Associated Theaters to petitioner, petitioner should be entitled to additional deductions for the fair and reasonable value of the services performed by his wife and for the fair and reasonable rental value of the use of the Avon Theater for 1943. These deductions, however, seem not to have been claimed by petitioner in his income tax return nor considered at the hearing. Not having been presented to the Tax Court the question can not be here reviewed.

The decision of the Tax Court is therefore affirmed, without prejudice, however, to the right of petitioner, if he shall be so advised, to apply to the Tax Court to reopen said cause for the purpose of permitting him to show what amounts, if any, were paid out by Stella Yiannias from the income received by her from Associated Theaters in payment of rent, insurance, repairs or upkeep on the property covered by said lease during the year 1943.

WOODROUGH, Circuit Judge concurring.

I concur fully in the opinion herein except that the declaration "A taxpayer has the right to avoid or decrease the amount of his income taxes by any means which the law permits" appears to me to be in conflict with 26 U.S.C.A. § 1821 which denounces as a felon "any person who wilfully attempts in any manner to evade or defeat any tax imposed by this chapter." (Income taxes).