## PEARCE *v.* COMMISSIONER OF INTERNAL REVENUE.

No. 306. Argued February 5, 1942.—Decided March 9, 1942.

544

*Mr. Gordon S. P. Kleeberg* for petitioner.

*Mr. Gordon B. Tweedy,* with whom *Solicitor General Fahy, Assistant Attorney General Clark,* and *Messrs. J. Louis Monarch* and *Michael H. Cardozo, IV,* were on the brief, for respondent.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

Petitioner and her husband separated in 1913. There was an agreement providing for monthly payments by the husband for her support. That agreement was amended in 1916 so as to provide monthly payments to her of $500 for life. Her husband, however, was given an option to terminate the arrangement by purchasing an annuity contract from a life insurance company which would pay petitioner $500 a month for the rest of her life. In 1917 petitioner obtained an absolute divorce in Texas, her husband entering a personal appearance. Neither alimony nor a property settlement was mentioned in the divorce decree. There were no children. Several months after the divorce, Mr. Pearce purchased an annuity from an insurance company for petitioner's benefit. The annuity provided for a payment of $500 per month during her life.

Neither petitioner nor Mr. Pearce included the $6,000 received by her under the annuity contract in their federal

income tax returns for 1935 and 1936. The Commissioner sent deficiency notices to both of them. Each appealed to the Board of Tax Appeals. At the hearing the Commissioner contended that the payments were income of petitioner. The Board upheld that contention. 42 B. T. A. 91. The Circuit Court of Appeals affirmed the judgment of the Board, one judge dissenting. 120 F. 2d 228. We granted the petition for certiorari because of the manner in which that court applied the rule of *Helvering* v. *Fitch*, 309 U. S. 149, and *Helvering* v. *Leonard*, 310 U. S. 80, in case the ex-wife rather than the husband was sought to be taxed on alleged alimony payments.

The Circuit Court of Appeals reached the conclusion that petitioner was liable by the following line of reasoning. The determination of the Commissioner that the monthly payments were income of petitioner was presumptively correct; the burden to show error rested on petitioner. *Welch* v. *Helvering*, 290 U. S. 111, 115. Error might be shown by submitting "clear and convincing proof" (*Helvering* v. *Fitch, supra*, p. 156) that the payments were made pursuant to a continuing obligation of her former husband to provide for her support, so as to make the rule of *Douglas* v. *Willcuts*, 296 U. S. 1, applicable. The burden of establishing error is not sustained by a divorced wife merely by showing that an obligation of her former husband might have continued despite the divorce. Since it is doubtful and uncertain under Texas law whether petitioner's former husband was discharged of his marital obligation by the settlement in question, petitioner failed to show that the presumptively correct determination that she was liable was erroneous.

We do not think that that was a correct application of the rule of the *Fitch* and *Leonard* cases. Those cases hold that the income is taxable to the former husband, not only

where it is clear that payments to his ex-wife were made pursuant to a continuing liability created by his contract or by local law, but also where his undertaking or local law makes that question doubtful or uncertain. Those cases, like *Douglas* v. *Willcuts, supra,* involved situations where the divorced husband was sought to be taxed on payments to his ex-wife. But the rule which they express supplies the criteria for determining, in absence of a different statutory formula, whether payments received by the ex-wife are properly taxable to her or to her divorced husband. If the Commissioner proceeds against the ex-wife, she sustains her burden of rebutting his presumptively correct determination merely by showing doubts and uncertainties as to whether the payments were made pursuant to her former husband's continuing obligation to support her. If the Commissioner proceeds against her former husband, he sustains his burden by submitting clear and convincing proof that the payments were not made pursuant to any such continuing obligation. *Helvering* v. *Fuller,* 310 U. S. 69. The other course would make the liability of the divorced wife or the divorced husband wholly dependent on the election of the Commissioner to proceed against one rather than the other where, for example, local law was uncertain. But the rule of *Douglas* v. *Willcuts, supra,* rests on a more substantial basis. Its roots are in local law and the undertakings of the husband. It calls for the use of the same criteria whether the husband or the wife is sought to be taxed.

We think, however, that petitioner has not maintained her burden in this case. Her former husband was not under a continuing contractual obligation to contribute to her support. For, the agreement made in 1916 provided for the termination of his personal obligation to make payments to her in the event that he purchased

548

the designated annuity. And so far as Texas law is concerned, she has not maintained her burden. Her showing as to Texas law is illustrated by the following.

By statute in Texas, alimony may be awarded during the pendency of a suit for a divorce "until a final decree shall be made in the case." 13 Vernon's Civil Stats., Art. 4637. "This statute is exclusive in its very nature, and no alimony can be decreed by any court in this state except under its express terms." *Martin* v. *Martin,* 17 S. W. 2d 789, 791–792. It has been broadly stated in *Phillips* v. *Phillips,* 203 S. W. 77, 79 that, "In this state the legal duty of the husband to support his wife ceases upon the severance of the marital bonds, nor has a court the power to decree that a husband or his property may be subjected to such support after divorce. Permanent alimony is not provided for by Texas statute." And see *Pape* v. *Pape,* 13 Tex. Civ. App. 99, 35 S. W. 479; *Boyd* v. *Boyd,* 22 Tex. Civ. App. 200, 54 S. W. 380. It is, however, provided by statute that the divorce court shall order "a division of the estate of the parties in such a way as the court shall deem just and right, having due regard to the rights of each party and their children, if any." 13 Vernon's Civil Stats., Art. 4638. That power extends not only to community property but to the separate property of the husband. *Ex parte Scott,* 133 Tex. 1, 123 S. W. 2d 306; *Clark* v. *Clark,* 35 S. W. 2d 189; *Berg* v. *Berg,* 115 S. W. 2d 1171; *Keton* v. *Clark,* 67 S. W. 2d 437. At times the divorce court has made such a division of the estate as apparently to impose on the husband a personal obligation to make stated payments to his wife. *Wiley* v. *Wiley,* 33 Tex. 358. Furthermore, a divorce decree which does not settle the rights of the parties to community property may not preclude a subsequent suit by the wife to establish her rights in it. See *Gray* v. *Thomas,* 83 Tex. 246, 18 S. W. 721. And the decree may

be corrected to conform to the intention of the parties. *Keller* v. *Keller*, 135 Tex. 260, 141 S. W. 2d 308. The power of the court to modify a property settlement previously approved, so as to give the wife an interest in property not covered by the earlier decree, has been denied in absence of fraud or mistake. *Cannon* v. *Cannon*, 43 S. W. 2d 134. Petitioner challenges the reliability of the latter case because on appeal the case was dismissed for want of jurisdiction (121 Tex. 634), which meant either disagreement with the reasoning but approval of the result, or lack of jurisdiction. 3 Vernon's Civil Stats., Art. 1728. And see *Republic Ins. Co.* v. *School Dist.*, 133 Tex. 545, 125 S. W. 2d 270.

We need not, however, endeavor to resolve that doubt. Nor need we speculate as to the power of the court at some future time to order a division of property in this case, and as an incident thereto to impose on petitioner's husband a personal obligation, as was apparently done by the divorce decree in *Wiley* v. *Wiley, supra.* See 6 Tex. L. Rev. 344 discussing *Helm* v. *Helm,* 291 S. W. 648. For even though petitioner established that the divorce court retained that broad power, not specifically reserved, and even though we assume that the power to make a division of property is the equivalent of a power to provide permanent alimony, she has not maintained her burden of rebutting the presumptively correct determination of the Commissioner that the income from this annuity contract was taxable to her. In order to maintain that burden, she would have to show that it was at least doubtful and uncertain whether the Texas court, as an incident of its power to require the husband to support his wife, retained control over this annuity contract or the income from it. That at least is the result unless we are to broaden the base on which the *Fitch, Fuller,* and *Leonard* cases rest.

**550**

Those cases involved so-called alimony trusts. In each, the trust was irrevocable. In each, the husband had an obligation to support his wife.

In the *Fitch* case, the trust provided that the wife was to receive, during her life, $600 a month from the income of the trust property; the husband, the balance. We held that the husband had not shown by "clear and convincing proof" that "in Iowa divorce law the court has lost all jurisdiction to alter or revise the amount of income payable to the wife from an enterprise which has been placed in trust. For all that we know it might retain the power to reallocate the income from that property even though it lacked the power to add to or subtract from the corpus or to tap other sources of income. If it did have such power, then it could be said that a decree approving an alimony trust of the kind here involved merely placed upon the pre-existing duty of the husband a particular and specified sanction." 309 U. S. at p. 156. And in speaking of the alimony trust involved in *Douglas* v. *Willcuts, supra,* we stated (pp. 151–152):

"It is plain that there the alimony trust, which was approved by the divorce decree, was merely security for a continuing obligation of the taxpayer to support his divorced wife. That was made evident not only by his agreement to make up any deficiencies in the $15,000 annual sum to be paid her under the trust. It was also confirmed by the power of the Minnesota divorce court subsequently to alter and revise its decree and the provisions made therein for the wife's benefit. Likewise consistent with the use of the alimony trust as a security device was the provision that on death of the divorced wife the corpus of the trust was to be transferred back to the taxpayer."

In the *Leonard* case, income from the trust was to be paid to the wife for her life, which together with income from other property was estimated at $30,000 a year. A separa-

tion agreement provided that the husband would pay his wife an additional $35,000 each year during her life, so that her aggregate net income for the maintenance of herself and her children would be $65,000 a year. The separation agreement also provided that, in the event the husband's ability to make the annual payment of $35,000 became impaired, he might apply to a court for a reduction of his obligation of not less than $10,000 a year. We held that the husband had not sustained his burden of showing that "local law and the alimony trust" gave him "a full discharge" from his obligation to support his wife. 310 U. S., p. 86. The trust and the undertaking in the separation agreement were integral parts of an arrangement by which the "maintenance and support" of the wife "were secured." p. 85. We noted that it was not clear, under New York law, whether or not such a settlement could be remade by the court, though there was some authority which indicated that the divorce court's reserved power might be exercised "where the provision in the separate agreement, approved by the decree, is for support and maintenance." pp. 86–87. In view of that fact and the nature of the settlement, we concluded that the husband had not shown that the trust was not mere security for his continuing obligation to support his wife.

In the *Fuller* case, it was clear, under Nevada law, that the court retained no control over the divorce decree which approved the trust settlement. Since there was no such reserved power, and since the trust contained no contractual undertaking by the husband for support of the wife, we concluded that his obligation to support had been *pro tanto* discharged. We held, however, that the husband was taxable on a $40 weekly payment which he had agreed to make to his wife. But that fact did not make him taxable on income from the trust also, since the provision for weekly payments and the trust "were not so interrelated or interdependent as to make the trust a security for the

552

weekly payments." p. 73. We also noted (p. 76) that, though "the divorce decree extinguishes the husband's preëxisting duty to support the wife, and though no provision of the trust agreement places such obligation on him, that agreement may nevertheless leave him with sufficient interest in or control over the trust as to make him the owner of the corpus for purposes of the federal income tax," under the rule of *Helvering* v. *Clifford,* 309 U. S. 331.

Thus, a property settlement made for the purpose of maintaining or supporting the wife may be treated for income tax purposes as mere *security* for the husband's continuing obligation, dependent on such considerations as whether it contains, or is interrelated with, contractual obligations of the husband for her support; whether the court has a reserved power to alter or modify it; or whether the husband retains any substantial interest in the property conveyed. Where the settlement carries some of the earmarks of a security device, then the power of the court to add to the husband's personal obligations may be especially significant. See *Helvering* v. *Leonard, supra.* But where, as here, the settlement appears to be absolute and outright, and on its face vests in the wife the indicia of complete ownership, it will be treated as that which it purports to be, in absence of evidence that it was only a security device for the husband's continuing obligation to support. There may be difficulty in placing a particular case on one side of the line rather than the other. But as stated by Mr. Justice Holmes in *Irwin* v. *Gavit,* 268 U. S. 161, 168, "That is the question in pretty much everything worth arguing in the law." And see *Harrison* v. *Schaffner,* 312 U. S. 579, 583.

As we have said, petitioner has made no showing whatsoever that the Texas court retained the power to reallocate the income from this annuity contract or to control it in any way as an incident of its power to require the husband

to support the wife. She has not shown that the divorce court imposed any personal obligation on the husband in respect to the settlement in question. And she is not aided by those cases which enforce agreements of the husband to make periodic payments to the wife. See *Johnson* v. *Johnson,* 14 S. W. 2d 805. There is no such agreement here. Proof that the Texas court might add to the husband's personal obligations as an incident to a future property settlement is no substitute for proof that the court had the power to remake this property settlement after it was consummated. Hence there is no ground for concluding that this settlement, which is absolute on its face, is mere security for an obligation of a husband to support his wife.

"The correct ground for refusing to tax such income to the husband is merely that it is the lump sum which discharges him and not the future income received by the wife." Paul, Five Years with *Douglas* v. *Willcuts,* 53 Harv. L. Rev. 1, 17, note 44. We noted in *Helvering* v. *Fuller, supra,* p. 74, that outright transfers of property to the wife, though providing for her maintenance and support, were no different from cases "where any debtor, voluntarily or under the compulsion of a court decree, transfers securities, a farm, an office building, or the like, to his creditor in whole or partial payment of his debt." We do not think that it would be proper to extend the rule of *Douglas* v. *Willcuts, supra,* to such a situation. The possibility that the divorce court might add to the husband's personal obligation does not alter the result. As in the *Fuller* case, the transfer of property to the wife might result only in a partial discharge of the husband's obligation. If the husband undertook, or was directed, to make other payments, he might be taxable on them. But the fact that he is taxable on a part of the payments received by the wife does not necessarily make him taxable on all. *Helvering* v.

*Fuller, supra,* p. 73. Hence the statement in *Helvering* v. *Fitch, supra,* 309 U. S. at p. 156, that it must be clear "that local law and the alimony trust have given the divorced husband a full discharge and leave no continuing obligation however contingent" is to be read in light of the fact that the alimony trust in that case was deemed to be a mere security device for the husband's continuing obligation to support. For the husband was relieved from payment of the tax on income from the property settlement in the *Fuller* case though he had a continuing obligation to pay the wife $40 a week.

If the rule of *Douglas* v. *Willcuts, supra,* is not to be extended to this type of case, then, on the showing which has been made, the husband would have sustained his burden in case the Commissioner had proceeded against him. Cf. Mitchell v. Commissioner, 38 B. T. A. 1336. Clearly, then, the wife may not escape.

Such cases as *Helvering* v. *Horst,* 311 U. S. 112, *Helvering* v. *Eubank,* 311 U. S. 122, and *Harrison* v. *Schaffner, supra,* are not opposed to this result. Those cases dealt with situations where the taxpayer had made assignments of income from property. He was held taxable on the income assigned by reason of the principle "that the power to dispose of income is the equivalent of ownership of it and that the exercise of the power to procure its payment to another, whether to pay a debt or to make a gift, is within the reach" of the federal income tax law. *Harrison* v. *Schaffner, supra,* p. 580. But in those cases the donor or grantor had "parted with no substantial interest in property other than the specified payments of income." *Id.* p. 583. Here he has parted with the corpus. And "the tax is upon income as to which, in the general application of the revenue acts, the tax liability attaches to ownership." *Blair* v. *Commissioner,* 300 U. S. 5, 12. Finally, there is no barrier under the income tax laws to taxing the holder of

an annuity on the income received, however his interest in the fund which produces the income may be described. Cf. *Irwin* v. *Gavit, supra.*

*Affirmed.*

MR. JUSTICE FRANKFURTER, dissenting:

The social fact that a husband is normally under a responsibility to provide for his wife even after they are divorced, is the basis for the rule that monies received by a wife under a divorce settlement are presumed to be in discharge of a continuing obligation of the husband. I therefore agree with the decision of the Court to the extent that it reinforces this rule as a rule of policy, and not one of caprice varying with the sex of the taxpayer against whom the Commissioner chooses to proceed. I agree that if the Commissioner proceeds against the wife, "she sustains her burden of rebutting his presumptively correct determination merely by showing doubts and uncertainties as to whether the payments were made pursuant to her former husband's continuing obligation to support her," and that if, on the other hand, the Commissioner determines that the payments are taxable to the husband, the latter sustains his burden only "by submitting clear and convincing proof that the payments were not made pursuant to any such continuing obligation." But I do not agree that the petitioner has failed to make the showing which is required under the rule professed by the Court.

Local law may provide that the transfer of property under a divorce settlement finally and definitively terminates a husband's obligation to support his wife, and that, once such a settlement is made, the wife loses her right to apply to a court for an order requiring the husband to support her. If the local law gives the settlement such effect, it is immaterial what the nature of the

transferred property is. For, in such a case, the income derived from the property cannot be regarded as conferring any benefit upon the husband, and it is therefore taxable to the wife. On the other hand, local law may provide that, even though a husband has made a complete, irrevocable transfer of property, he has nevertheless not obtained a full discharge of his marital obligations to his wife, and that, where circumstances in the future may warrant, a court can order the husband to make further contributions to her support. In such a case, the husband is still under a "continuing obligation however contingent," *Helvering* v. *Fitch*, 309 U. S. 149, 156; *Helvering* v. *Leonard*, 310 U. S. 80, 84, and, since the income received by the wife from the property contributes to her support and thus serves to discharge the obligation which under local law the husband still owes her, the income should be taxable to him. "The dominant purpose of the revenue laws is the taxation of income to those who earn or otherwise create the right to receive it and enjoy the benefit of it when paid." *Helvering* v. *Horst*, 311 U. S. 112, 119; and see *Harrison* v. *Schaffner*, 312 U. S. 579.

The fact that the wife may, years after the settlement, have to go to court for an order requiring the husband to make additional payments for her support is of no legal consequence if the husband may be required to make such payments. A legal obligation may continue, even though its burden is contingent upon future judicial action. A wife's receipt of income from property settled upon her may make it unnecessary to her ever to apply for a court order. But it does not follow that, unless and until she goes to court for such an order, her husband is under no legal obligation to support her. If the income from the property should dwindle to the point where the wife can no longer maintain herself,

and the law has continued its hold upon the husband so that he may be required to make further contributions to her support, then plainly the husband is still under a "continuing obligation however contingent." The determinative fact is that the law has continued its hold upon the husband, not that it has reserved the power to modify the particular settlement.

It is utterly immaterial whether the property transferred was an irrevocable trust, as in the *Fitch* and *Leonard* cases, or an annuity contract, as we have here. For the annuity is taxable income, *Irwin* v. *Gavit,* 268 U. S. 161, and the procurement, by the husband's purchase, of its payment to his wife renders the annuity taxable income to him if it is in discharge of his obligation, quite as much as if he had procured the payment by creating a trust of his property. *Harrison* v. *Schaffner, supra.*

In every case, the decisive inquiry is whether the husband's obligation subsists after the divorce settlement, or whether, as a result of the settlement, he is quits of his wife, once and for all, for better or for worse. If he is under a continuing obligation, the property transferred, whether it be an irrevocable trust or an annuity contract, is a security device only in the sense that it operates to secure the fulfillment of the obligation. If the fact that the husband has divested himself of control over the transferred property were determinative, certainly the *Fitch* and *Leonard* cases, at least, would have been decided the other way. For in each of these cases the husband conveyed an absolutely irrevocable trust, over which he had no greater control than the husband has over the annuity in the case before us. These cases show that if a husband is under a continuing obligation to support his wife, income from the property is taxable to him, not because he has retained any interest in or control over the property, but because the income dis-

charges *pro tanto* a legal obligation which he owes and thus confers a taxable benefit upon him. The ultimate criterion of taxability, therefore, is not whether a state court has reserved power to control the property transferred by a husband under a divorce settlement, but whether "the court lacks the power to add to his personal obligations." *Helvering* v. *Leonard,* 310 U. S. 80, 87.

In law, as in life, lines have to be drawn. But the fact that a line has to be drawn somewhere does not justify its being drawn anywhere. The line must follow some direction of policy, whether rooted in logic or experience. Lines should not be drawn simply for the sake of drawing lines.

The decisions of this Court dealing with the question before us have turned upon whether local law was uncertain as to the existence of a continuing obligation on the part of the husband to support the wife. The opinion of the Court now introduces another element, namely, whether the local law is uncertain as to the power of the state courts to remake the particular settlement. This, it seems to me, has no valid relation to the basic principle of tax liability that "he who receives benefits should be taxed." Whether a husband is benefited from the payment of monies to his divorced wife depends upon his obligation to her which the payment of the monies served to discharge, not upon the nature of the wife's interest in the property he has transferred to her. To introduce such an unwarranted refinement is to clog the administration of the revenue laws.

But, in any event, all of the judges of the Circuit Court of Appeals were agreed that "the law of Texas is uncertain as to whether the taxpayer's husband discharged himself of his marital liability by the settlement at bar." 120 F. 2d 228, 230. This general uncertainty as to Texas law is

controverted now, not by controlling Texas authority but by extended argumentation and speculation. The Court suggests that, had the Commissioner gone against the husband, he would have sustained the burden as heretofore defined, namely, of showing, "by submitting clear and convincing proof," that under local law he was under no continuing obligation. Support for the proposition is drawn not from any Texas authority, whether statute or decision, but from a decision of the Board of Tax Appeals, Mitchell v. Commissioner, 38 B. T. A. 1336. But, in that case there was a division of property between husband and wife, which included property belonging to the wife under an earlier arrangement entirely unrelated to the husband's marital obligations. The Board held that the income from such property could not, therefore, be taxed to the husband. As its opinion shows, the decision did not turn on the Texas law of divorce: "We think that the trust income which was paid to her [the wife] was her separate income. It was not paid in satisfaction of any legal obligation of J. A. Mitchell [the husband] and it is not taxable to him." 38 B. T. A. at 1342.

The Court's exegesis of Texas law shows it to be no less uncertain than was the Iowa law in the *Fitch* case, or the New York law in the *Leonard* case. The effect of the Court's ruling that the wife, in order to escape tax liability, must clearly establish that the state court has reserved the power to modify the terms of the particular property settlement is to reject the rule of policy enunciated earlier in its opinion. For there is no clear Texas authority, and under the rule of the *Fitch* and *Leonard* cases, which the Court does not purport to modify, the husband would be unable to show, "not by mere inference and conjecture but by 'clear and convincing proof'" (*Helvering* v. *Leonard, supra,* at 86; see *Helvering* v. *Fitch, supra,* at 156), that the payments made to his wife did not discharge a con-

tinuing obligation which he owed her. Therefore, liability under the tax law is made actually to depend upon whether the Commissioner elects to go against the husband or the wife. Having closed the front door to determination of tax liability by caprice, the Court allows caprice to enter through the back door of "presumption."

We brought this case here in order to clarify an important question arising under the federal revenue laws, not to re-examine the correctness of the lower court's finding regarding the uncertainty of Texas law as applied to this case. The general uncertainty of Texas law with respect to control over divorce settlements is conceded—and that is the decisive factor for our purpose. The absence of specific Texas authority dealing with such an annuity settlement as we have here does not lessen or remove that uncertainty, or justify us in making assumptions regarding the Texas law affecting such a settlement. Where prophecy as to a state court's ruling on its local law is not imperatively required of us, experience counsels abstention from prophecy. No ruling of ours can make Texas law.

I believe therefore that the judgment below should be reversed because of the ruling on federal law as to which we all agree, and that Texas law should be left where the Circuit Court of Appeals found it.

The CHIEF JUSTICE joins in this dissent.