Princess Lida of Thurn and Taxis v. Commissioner.
Lida v. Commissioner
Docket No. 8257.
United States Tax Court
1946 Tax Ct. Memo LEXIS 42; 5 T.C.M. (CCH) 944; T.C.M. (RIA) 46257; October 31, 1946
*42 Petitioner, a divorced wife in the taxable years 1939, 1940 and 1941, received certain payments under agreement of her former husband establishing certain trusts. Held, the income of such trusts was received by petitioner as alimony, or in lieu of alimony, and she is not taxable thereon. Princess Lida of Thurn and Taxis, 37 B.T.A. 41, followed. Charles B. McInnis, Esq., 735 Transportation Bldg., Washington, D.C., for the petitioner. Jay O. Kramer, Esq., and Hobby H. McCall, Esq., for the respondent. LEECH
Memorandum Opinion LEECH, Judge: This proceeding involves deficiencies in income taxes, as follows: Year
Amount
1939
$ 4,691.68
1940
4,335.69
1941
14,189.29
The primary issues submitted are: (1) whether petitioner is taxable on the income of certain trusts; *43 and (2) whether petitioner is entitled to an exemption as head of a family for the year 1941. Secondary issues arise in the event the first issue is answered in the affirmative. Other issues have been adjusted by stipulation. The case was submitted upon a stipulation of facts and documentary evidence. The stipulated facts are found as stipulated. Those material here are summarized as follows: The petitioner, Princess Lida of Thurn and Taxis, is an individual residing at 177 West Main Street, Uniontown, Pennsylvania. Her income tax returns for the taxable years 1939, 1940, and 1941, here involved, were filed with the collector of internal revenue for the third district of New York. In 1899 Gerald Purcell Fitzgerald, a citizen of Ireland, and petitioner were united in marriage in the State of California. The following three children were born to that marriage: John Purcell Fitzgerald, born September 23, 1899, Edward Maurice Fitzgerald, born October 25, 1900, and Gerald Purcell Fitzgerald, Jr., born October 25, 1900. On the 16th day of February, 1906, petitioner filed a petition in the King's Bench Division (Matrimonial) of the High Court of Justice of Ireland against Gerald Purcell *44 Fitzgerald. On the 5th day of December, 1906, a decree of divorce and separation from bed and board and mutual cohabitation, with costs, was pronounced. On December 6, 1906, Fitzgerald, his wife, and three trustees consisting of the husband and two residents of Uniontown, Pennsylvania, entered into an agreement, which provided in part: 1. The husband agrees to pay to the wife by quarterly payments alimony at the rate of Three Thousand Pounds per annum from the 5th day of December, one thousand nine hundred and six, to the twelfth day of August, one thousand nine hundred and seven, or to the date of the passing of the Act of Parliament dissoving her said marriage if passed earlier than the twelfth day of August, one thousand nine hundred and seven, the wife undertaking to make no application in the meantime to the Court for alimony. 2. As from the date of the passing of the Act of Parliament finally dissolving the marriage of the husband and wife in consideration of the premises the husband will pay to the Trustees in trust and for the uses and purposes hereinafter set forth so much of his share of the profits accruing annually from and out of the properties known as the Fayette *45 Coke Company and the Shamrock Supply Company situated at Shamrock near New Salem, Fayette County, Pennsylvania, United States of America, as will yield an annuity of Fifteen Thousand Dollars per annum for three years and after three years so much of his share of the said profits therefrom as will yield an annuity of Twenty Thousand Dollars per annum, the said annuity or annuities respectively to be collected from the said companies and paid to the wife by and through the Trustees in such lawful manner and at such times as they shall determine but not less often than in the sums of Five Thousand Dollars on January first, May first and September first, for the first three years and Five Thousand Dollars on December first, March first, June first and September first of each year after the said three years to be due and payable to the wife for and during the term of her natural life. 3. For the consideration aforesaid the husband will also pay to the Trustees out of the balance of his nine-tenths share of the profits arising out of the said two companies named above to be paid to and collected by the Trustees from time to time from the passing of the said Act of Parliament in manner *46 as follows to wit: One-third of his said share of the said profits after deducting the said annuities above provided for, such payment to be made to the Trustees at the end of each financial year of the said companies after the ascertainment of the said yearly profits, the first of such payments to be made on February first, one thousand nine hundred and seven as the profits calculated as from the first of September, one thousand nine hundred and six, and such payments shall be invested by them until a total sum of Three Hundred Thousand Dollars has accumulated in the hands of the Trustees, whereupon the Trustees shall pay to the wife on the first day of February, one thousand nine hundred and eight and on the first day of February in each succeeding year thereafter for and during her natural life one-half of the income received from the investment of the said Three Hundred Thousand Dollars, or of so much thereof as at the date thereof shall have been received and invested by such Trustees, and shall in their discretion either accumulate or expend the other half of such income for the benefit of the said children of the husband and wife, videlicit: John, Edward and Gerald Fitzgerald, *47 or the Trustees may pay the entire income to the wife in their absolute discretion until the eldest surviving child shall have attained the age of twenty-one years. In case the wife should die the entire income from the Trust Fund shall belong to the children. If all the children should die before the death of the wife, the children's share of the income from the said fund may be paid to her in the discretion of the Trustees, and if not paid to her shall be paid to the husband or to his executors, administrators or appointees. The agreement further provided: 7. In consideration of the benefits to be obtained by the foregoing provisions in her favor the wife hereby agrees that in the event of the act of divorce becoming law that any right she may have to dower, alimony or otherwise under the laws of any of the United States or of Great Britain or Ireland shall be extinguished by and merged in this agreement, the execution whereof by her shall be deemed and taken to be a waiver by her of all such rights to all intents and purposes as affecting the property of her husband. On July 26, 1907, the bond of matrimony between Gerald Purcell Fitzgerald and his wife was "wholly dissolved, *48 annulled, vacated and made void to all intents, constructions and purposes whatsoever" by an Act of Parliament. Under the law of England a covenant concerning alimony made between divorced parties is not binding on a court, and in case of the wife's subsequent petition for alimony, the court may use its unfettered discretion in making an alimony award and fixing the amount thereof, regardless of prior contract. The wife's remarriage does not, ipso facto, terminate her right to alimony. The Irish Court, at the time it entered its decree referred to above, was without authority to decree an absolute divorce, and the husband remained under an obligation to support the wife. Fitzgerald had extensive business interests in this country in Fayette County, Pennsylvania. He had a nine-tenths interest in two partnerships known as the Fayette Coke Company and the Shamrock Supply Company situate at Shamrock, near New Salem, Fayette County, Pennsylvania. He was in receipt of a large annual income from these partnerships at the time that he was divorced from his wife. For a time he made the payments called for by his agreement of December 6, 1906. However, in 1910 he became in arrears in making *49 the required payments and his divorced wife, in her own right, and Josiah V. Thompson, one of the trustees under the agreement of December 6, 1906, on October 27, 1910, filed a bill in equity in the Court of Common Pleas, Fayette County, Pennsylvania, for judgment against him for the amounts then due and such proceedings were had that, on the 15th day of March, 1911, the court entered its order therein. Said order provided in part as follows: III That the payments provided for in said agreement of December 6, 1906, be and the same are hereby adjudged to be a lien on all the right, title, and interest of the defendant, Gerald Purcell Fitzgerald, in and to the real property described in Paragraph Ninth of the Bill filed herein and known as the Fayette Coke Company property. * * *
VII That the defendant, Gerald Purcell Fitzgerald, be and he is hereby restrained and enjoined from anywise alienating, encumbering or otherwise disposing of his interest in the property of the Fayette Coke Company and in the property of the Shamrock Supply Company unless and until there shall first have been accumulated in the hands of the Trustees under the said agreement of December 6, 1906, the *50 sum of Three Hundred Thousand Dollars, as provided by Paragraph Third of said agreement. Thereafter Fitzgerald made the required payments until 1914, when he again became in arrears. Disputes and contentions arose between him and the trustees. On March 5, 1915, Josiah V. Thompson, Charles E. Lenhart and William W. Parshall, as trustees under the agreement of December 6, 1906, filed a petition in the Court of Common Pleas of Fayette County, Pennsylvania, praying for a modification of the decree of March 15, 1911. An agreement was then reached between Fitzgerald and his divorced wife and the trustees that, from January 1, 1915, all of the profits from the Fayette Coke Company property should be received by Fitzgerald alone; that there should be paid to the trustees, out of the sinking fund of the Fayette Coke Company, $10,242.12, representing the deficiency in annuity payments to January 1, 1915, and that the balance and the sinking fund, amounting to $78,491.08, should be paid over to the trustees toward the accumulation of a fund of $400,000; that Fitzgerald should give a mortgage to the trustees securing the balance of the $400,000 fund above referred to, of $321,508.92 which *51 should bear interest from January 1, 1915, at the rate of six per cent per annum, payable semiannually until the $400,000 fund should be fully established; that there should also be paid to the trustees, in addition to interest upon the $321,508.92, eighteen cents out of each ton of coal mined from the Fayette Coke Company until the mortgage indebtedness had been paid off and the fund of $300,000 referred to in paragraph 3 of the agreement of December 6, 1906, was established. It was further provided in the agreement that the divorced wife's annuity of $20,000 should, from January 1, 1915, come, not out of the profits from the Fayette Coke Company property, but out of the interest payments received on the mortgage indebtedness and out of income from securities purchased by the trustees from the moneys which should be accumulated by them from payments made to them by Fitzgerald; and that any excess income of the fund should be retained by the trustees for the purpose of paying off any accumulated deficiencies in the annuity payments; that, upon the death of the divorced wife, the residue of the $400,000 fund, hereinafter called the "Alimony Fund" and its surplus accumulations, if any, *52 should be paid to Fitzgerald, his heirs, executors, administrators or assigns. On March 5, 1915, the court entered its decree, which provided in part: 3. The sum of $78,491.08 and the sums paid from time to time on the principal of said mortgage shall be held by said Trustees during the life of the Wife in Trust to invest the same in good, safe interest bearing lawful and secure trust securities and apply the net income therefrom together with the interest arising from the mortgage aforesaid to the payment to the wife of the annuity aforesaid, the surplus income, if any, to be accumulated and applied as occasion may require to make up any deficiency that may occur in the payment of such annuity. Pursuant to the terms of this decree, the "Children's Fund" in the amount of $300,000 was completed on July 1, 1919. The fund for the benefit of the divorced wife, the "Alimony Fund", was completed May 25, 1925. No copy of the decree of the High Court of Justice of Ireland, nor of the petition for the divorce by Act of Parliament of Great Britain is available, by reason of the fact that the records of the Irish Court were burned in a conflagration and the records of the English solicitors *53 who handled the British divorce proceeding were lost and can not be found. The said Gerald Purcell Fitzgerald was a nonresident alien of the United States during each of the years 1939, 1940, and 1941, and is now alive, presently residing at Waterford, Ireland. On June 11, 1928, Fitzgerald entered into an agreement with the Second National Bank of Uniontown, Pennsylvania, whereby he transferred to the bank, as trustee, his reversionary interest under the agreement of March 5, 1915, with respect to the "Alimony Fund", reserving to himself the income for life, provided he survived the wife. Other sections of the agreement made provision for four of his children "upon and after my death, and that of said Lida, whichever shall the later occur". On March 20, 1939, Fitzgerald entered into an agreement with his former wife and three children modifying the agreement of December 6, 1906, whereby Fitzgerald modified and amended clauses 6 and 9 of the agreement of December 6, 1906, to the extent of giving the wife, petitioner herein, during her lifetime and, upon her death, her surviving children either the right to appoint a trustee or trustees to fill any vacancy caused by the death, *54 resignation or personal disability of any trustee or, in her or their discretion, to petition the Court of Common Pleas of Fayette County, Pennsylvania to fill such a vacancy or vacancies. On July 7, 1939, Fitzgerald entered into another agreement with his former wife and three children, again modifying the agreement of December 6, 1906, whereby the number of trustees was reduced from three to two in number, and it was provided, inter alia, as follows: * * * Any one or all of the present or future Trustees therefor may be removed, by written notice effective ten (10) days after delivery thereof to such Trustees, during which ten day period no investment shall be made by such Trustees, such notice to be signed by Princess Lida of Thurn and Taxis alone, during her lifetime, who shall also have the sole power to appoint a successor trustee or trustees, from time to time, whenever a vacancy shall occur, by removal or otherwise. The said agreement also provided that, upon the death of Princess Lida of Thurn and Taxis, such right of removal of a trustee or trustees shall be vested in all the beneficiaries of the "Alimony Fund" and "Children's Fund" and provided that, during the lifetime *55 of the Princess Lida of Thurn and Taxis, the trustees may, in their discretion - * * * with the written consent of her as to the Alimony Trust Fund and with the written consent of her and her children as to the Children's Trust Fund invest from time to time any or the whole of said funds in Grade "A" securities, safe income producing securities, which are not at the time of such investment legal investment for trust funds under the laws of the Commonwealth of Pennsylvania and may hold any or all of such investments so made for such period of time as in the judgment of the trustees and the said Princess Lida of Thurn and Taxis and her children shall be for the best interest of the Alimony Trust Fund and the Children's Trust Fund. There were three trustees of the trust until 1938. One of them died in that year and no successor was appointed. The trustees were appointed by an order of the Court of Common Pleas of Fayette County, Pennsylvania. On July 7, 1939 there were two trustees, viz., Donald M. Higbee and Robert H. Arnett. On that date, pursuant to the power granted her under the agreement of July 7, 1939, petitioner mailed to said Higbee and Arnett a notice dismissing them as *56 trustees. On March 13, 1940, Fitzgerald assigned and transferred the life interest reserved to him under the agreement of June 11, 1928, to his three sons, John P. Fitzgerald, Edward M. Fitzgerald, and Gerald P. Fitzgerald, Jr. On the same day, viz., March 13, 1940, Fitzgerald executed an amendment to the agreement of June 11, 1928, whereby he provided in part as follows: (2) Upon the death of Lida, Settlor's former wife, now Princess Lida of Thurn and Taxis, or the death of Settlor, whichever the later shall occur, the entire corpus of the Alimony Fund, more fully identified in the said Deed of Trust dated the 11th day of June, 1928, shall be held in Trust by the Trustee or Trustees, and their successor or successors, and the income therefrom shall be paid semi-annually or quarterly, as the Trustee or Trustees and their successor or successors may from time to time determine, to Settlor's children: John P. Fitzgerald, Edward M. Fitzgerald, Gerald P. Fitzgerald, Jr. and Mary Augusta, share and share alike equally, during their lives, and after their respective deaths, the principals shall be distributed to their surviving issue, said issue to take per stirpes and not per capita. *57 If either John P. Fitzgerald, Edward M. Fitzgerald, Gerald P. Fitzgerald, Jr. or Mary Augusta shall die without issue to survive the share of the one so dying shall go and be allocated equally and ratably to and among the other shares appointed by this Clause. * * *
(10) Upon the death of the Princess Lida of Thurn and Taxis, or the death of Settlor, whichever the later shall occur, a majority of the beneficiaries of the Alimony Fund or the survivors of them shall have the absolute right to vote that the Trust be dissolved. The right to vote for the dissolution of the said Trust shall be exercised per stirpes and not per capita. The notice of dissolution shall be in writing signed by the beneficiaries or the survivors of them with the power to vote per stirpes as aforementioned. At all times here material the trusts were administered under the supervision of the Court of Common Pleas of Fayette County, Pennsylvania, and accounts showing receipts, disbursements and distribution of income were submitted by the trustees and approved by the court. Alimony is a recognized right and obligation under the law of England, and the agreement of December 6, 1906, made in contemplation *58 of divorce to provide for alimony, was not subject to change or termination by remarriage. The complete record in a proceeding before the United States Board of Tax Appeals entitled "Princess Lida of Thurn and Taxis", 37 B.T.A. 41, was offered and received in evidence. The respondent is again endeavoring to tax the petitioner on the income of two certain trusts despite our refusal to hold her liable therefor with respect to earlier tax years. Princess Lida of Thurn and Taxis, 37 B.T.A. 41. Petitioner relies primarily upon a plea of res judicata based upon the record in that case. The respondent argues that the plea is unavailing here, since the Supreme Court in Pearce v. Commissioner, 315 U.S. 543, has changed the applicable law. Arundel-Brooks Concrete Corp. v. Commissioner, 129 Fed. (2d) 762. Furthermore, he contends there are present here certain facts not before this Court when its prior decision was made. The respondent points out that in the years 1939 and 1940 certain amendments were executed which, briefly summarized, are as follows: (a) The March 20, 1939 agreement gave petitioner power to appoint trustees to fill *59 a vacancy due to death, resignation or disability, and also power to join the trustees in settling disputes concerning the trust funds. (b) The July 7, 1939 amendment reduced the number of trustees from three to two, with power in petitioner to dismiss the trustees on 10 days' notice; and also authorizes her to agree to the investment of trust funds in Grade A securities; (c) Petitioner, on July 17, 1939, removed two trustees; and (d) On March 13, 1940, the settlor assigned his contingent right to the income of the Alimony Fund and altered the remainder interest in said fund from which he had previously divested himself. It is clear, we think, that these amendments in no way changed the character of the original trust, the legal status of the petitioner, or the payments to which she was entitled under the agreement of December 6, 1906. This view renders it unnecessary to now determine whether such amendments made the plea of res judicata inapplicable. See Joseph Sunnen, 6 T.C. 431, on appeal to the Eighth Circuit. We assume, arguendo, that the amendments do have such legal effect. The issue here involved is whether the payments made to this petitioner in the taxable *60 years were alimony or in lieu of alimony, or were something else. The same issue was presented under similar facts, except as to the matters respecting the amendments above mentioned, in a previous proceeding involving this petitioner for prior taxable years. We there determined that the payments under the agreements, as they were before the 1939 and 1940 amendments, were payments of alimony or in lieu of alimony. We then concluded, under the established law, petitioner was not taxable thereon. Douglas v. Willcuts, 296 U.S. 1; Gould v. Gould, 245 U.S. 151; Maud H. Bush, 33 B.T.A. 628. We are aware of no controlling authority holding to the contrary. The law was not changed until 1942.[1] The case of Pearce v. Commissioner, supra, relied upon by the respondent, is clearly distinguishable. That case arose under the laws of Texas, a community property state. The Supreme Court reaffirms the rule of the cases of Helvering v. Fitch, 309 U.S. 149, and Helvering v. Leonard, 310 U.S. 80, holding that a former husband is taxable on the income of a trust where the payments to his ex-wife were made pursuant to a continuing *61 liability created by contract or local law. Its decision, holding the wife was taxable, was bottomed on her failure to prove such continuing liability on the part of her former husband. In the instant case the parties have stipulated the fact that, under the applicable law of England, the liability of the husband is continuing. In our former decision (37 B.T.A. 41), we found that to be the fact from the evidence.
The controlling facts in the instant case are the same as those controlling our previous decision. The applicable law also remains the same. Therefore, we follow our former decision and conclude petitioner is not liable in the taxable years 1939, 1940, and 1941 on the income of the two trusts in question as amended. This view renders it unnecessary to discuss petitioner's secondary positions. The remaining issue relates to respondent's denial of an exemption to petitioner as head of the family in the year 1941. The respondent allowed a personal exemption of $750. No proof on this issue was offered *62 by petitioner other than the tax returns for the prior years 1939 and 1940, in which the head of the family exemption was claimed and allowed. Petitioner, by such proof, has not overcome the presumption of the correctness of respondent's determination. Welch v. Helvering, 290 U.S. 111. The respondent is sustained on this issue. Effect will be given to the other matters covered by the stipulation in the computation under the rule. Decision will be entered under Rule 50. Footnotes
1. Secs. 22 (k) and 171, I.R.C.↩, as amended by section 120, Revenue Act of 1942, applicable to years beginning after December 31, 1941.