Paul W. SHEPHERD and Esther B. Shepherd

v.

UNITED STATES of America.

Civ. No. 2088.

United States District Court
E. D. Tennessee, S. D.

Dec. 31, 1954.

Taber, Chambliss, Swafford & Claunch, Chattanooga, Tenn., for plaintiffs.

H. Brian Holland, Atty. Gen., Andrew D. Sharpe, Arthur L. Biggins, Attys., Dept. of Justice, Washington, D. C., John C. Crawford, Jr., U. S. Atty., Knoxville, Tenn., for the United States.

DARR, Chief Judge.

Plaintiffs invoke the Court's jurisdiction under the provisions of Title 28, U.S.C.A., Sec. 1346(a) (1), and have filed suit against the United States to recover income taxes alleged to have been erroneously assessed and collected. The plaintiff, Paul W. Shepherd died intestate on August 21, 1954 and Paul W. Shepherd, Jr., has been duly appointed administrator of his estate. Order was made substituting Paul W. Shepherd, Jr., as plaintiff in the case in the place of decedent.

During 1949 four pieces of property to which Mrs. Shepherd held title were sold with a profit realized on each sale. She and her husband filed a joint return for that year and the proceeds of the sales were reported as capital gains. The sale of one piece of property, which had been held for less than six months, was reported as a short term capital gain, the others having been held for several years were reported as long term capital gains. Thereafter the Commissioner of Internal Revenue made a determination that these properties had been held primarily for sale to customers in the ordinary course of business and accordingly the gain realized should be taxed as ordinary income. A deficiency assessment in the amount of $622.62 plus interest of $94.37 was levied and paid by plaintiffs under protest. A claim for refund with interest was duly filed and has been disallowed.

The parties are in agreement that the ultimate issue for determination is whether the property sold was capital assets within the meaning of Section 117 of the Internal Revenue Code, 1939, 26 U.S.C.A. § 117, or whether they are excluded as constituting "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business."

Taxpayers' occupation was listed in the joint return as "Insurance, Mortgage Loans & Real Estate".

The evidence developed the fact that Mr. Shepherd had been dealing in real estate for a number of years. Around 1922, he subdivided and developed a tract of some 140 acres, which was known as Shepherd Hills subdivision. Shepherd held approximately forty per cent of the tract for the beneficial interest of his brothers and sisters, he owning outright the remainder. The legal title to all was vested in him to facilitate sales. When the depression came with the accompanying slump in land values and sales, Mr. Shepherd disposed of his properties by deeding back to his brothers and sisters their "just shares" and by conveying to certain banks sufficient property to satisfy loans previously made to him. The remainder, consisting of three lots with houses, all of which were mortgaged, he transferred to his wife as her "fair share of our community assets." Prior to this conveyance Mrs. Shepherd possessed no money or property of her own.

As conditions improved the value of the property transferred to her increased. One of the lots was sold in 1936 for $8,000, one in 1939 for $10,000, and the third in 1940 for $3,000. These sums were deposited in Mr. Shepherd's bank account and were available for his use in his business, if needed, as well as for possible future investments by Mrs. Shepherd. Until 1949 or 1950 no record was kept as to amounts used by Mr. Shepherd for which he might be indebted to his wife and no accounting was had between them. During 1934 or 1935 the banks foreclosed on the properties conveyed to them by Mr. Shepherd. This property was mostly lots in the Shepherd Hills subdivision.

Mr. and Mrs. Shepherd discussed the matter and decided to take advantage of the depressed prices then existing and buy in a number of these lots with the expectation of selling at a later date for a profit. In 1943 and 1946 such purchases were made, some ten lots being acquired in each of those years. All negotiations were handled by Mr. Shepherd and the payments were by checks drawn on his bank account but, according to him and his wife, out of funds

therein derived from the sale of her three properties mentioned above. Title to the property purchased was held by H. C. Harris, trustee, and upon complete payment of the purchase price title was transferred to Mrs. Shepherd, evidently in accordance with an oral understanding of the Shepherds and Harris. From time to time additional property was purchased, title being held by Mrs. Shepherd.

The particular properties whose sale gave rise to this suit are lots 37 and 38, Shepherd Hills; lot 35, Conner Estates; and 208 South Crest Road.

Both Shepherd Hills lots were sold at the same time. Mrs. Shepherd acquired lot 37 in 1938 for $1,900 paid by Mr. Shepherd by checks drawn on his account. Mrs. W. A. Redford owned lot 38 and Percy B. Shepherd, Mr. Shepherd's brother, owned lot 39. Three interested parties contacted two of Mr. Shepherd's real estate salesmen about buying parts of these three lots. Smith, who owned lot 40 wanted 25 feet from lot 39 in order to have a 125-foot frontage. Strahle, who had inquired of Darwin, one of Mr. Shepherd's salesmen, wanted 150 feet frontage consisting of the western 75 feet of lot 39 and the eastern 75 feet of lot 38. Campbell, who inquired of Land, another of Mr. Shepherd's salesmen, wanted 125-foot frontage to be made up of lot 37 and 25 feet from the eastern portion of lot 38. To work this out Mrs. Shepherd bought lot 38 from Redford, lot 39 was deeded to her to get the three lots and resulting 300 feet together so the deal could be carried out. All three lots having been acquired in her name, the lots were sold to people who can be classified as clients of Mr. Shepherd's real estate office. The gain on lot 37 was reported as a long term capital gain, that on lot 38 as short term capital gain.

The sale of lot 35, Conner Estates, was also somewhat involved, being connected with the sale of lots 33 and 34, Conner Estates. Mrs. Shepherd acquired lot 35 in 1936 for $500. Bender owned lots 33 and 34. Mr. and Mrs. Catlett, clients of Mr. Shepherd, wanted lot 35 (a corner lot) and 30 feet from adjoining lot 34—totaling 90 feet. To effect the sale Bender conveyed lots 33 and 34 to Mr. Shepherd as trustee for the Catletts, as did Mrs. Shepherd of her lot 35. Mr. Shepherd then reconveyed lot 35 and one half of lot 34 to the Catletts, remaining trustee over lot 33 and one half of lot 34. A short time later, in April 1949, Edwards contacted Mr. Shepherd, wanting to buy all three lots. A price was agreed upon, the Catletts conveyed their lots 35 and one half of lot 34, and Mr. Shepherd conveyed the property he held as trustee (lot 33 and one half of lot 34). The gain attributable to the sale of Mrs. Shepherd's lot 35 was reported in 1949 as a long term capital gain.

In May 1947, 208 South Crest Road was bought for $7,700 by Darwin. Darwin was a real estate salesman for Mr. Shepherd and bought the property at his direction as trustee for Mrs. Shepherd. The property was sold in 1949 for $9,500 to Maynard, who was also a client of Mr. Shepherd's agency.

■ It is a well-settled rule that whether property sold by a taxpayer was held for sale to customers in the ordinary course of his trade or business, within the meaning of Section 117, is essentially a question of fact. Friend v. Commissioner of Internal Revenue, 10 Cir., 198 F.2d 285; Rubino v. Commissioner of Internal Revenue, 9 Cir., 186 F.2d 304, certiorari denied 342 U.S. 814, 72 S.Ct. 28, 96 L.Ed. 615; Blake v. Kavanagh, D.C., 107 F.Supp. 179. There is no magic formula for disposing of this type case. In the last analysis each rests upon its own particular facts.

■ However, the cases reveal certain factors or criteria which the courts look to when called upon to make the determination. Among them are the extent of the transactions, the variety, number and continuity of sales, whether substantial or otherwise, and the time required and attention given. White v.

Commissioner of Internal Revenue, 5 Cir., 172 F.2d 629. Other considerations are the purpose for which the property was acquired and held, or held, activity of the seller *or those acting under his instructions or in his behalf,* and the extent or substantiality of the transactions. Blake v. Kavanagh, supra. Making improvements, advertising, and other efforts indicating an intention to attract customers are pertinent. Friend v. Commissioner of Internal Revenue, supra. See also Martin v. United States, D.C., 119 F.Supp. 468.

▋ Was the property here held for sale to customers in the ordinary course of business? The Court thinks it was. In addition to the facts already summarized, the record discloses other pertinent information which aided the Court in reaching its decision. Mr. Shepherd always handled *all* negotiations for the purchase and sale of his wife's property and the money for purchases as well as that received from sales came from and went into his bank account. No accounting was made of such funds until 1949 or 1950 when Mrs. Shepherd opened a separate bank account and began to take "notes" from her husband when he "borrowed" money from her. There is nothing wrong with one relying upon the judgment of another of superior business experience or in letting such person assist or exclusively conduct one's business activities. That is equally true whether the person relied upon is a husband or a third party. Individuals may lawfully choose to operate a business through a person or persons acting in their behalf. These facts disclose that Mrs. Shepherd was making full use of her husband's business knowledge in connection with her real estate transactions.

Defense exhibits 1 and 2, conceded by plaintiffs to be correct analyses of court house records, together with plaintiffs' and defendant's stipulation with reference thereto, reveal that between 1932 and 1953, Mr. and Mrs. Shepherd, separately or jointly, made forty purchases of property and during the same period made seventy sales.

As noted Mr. Shepherd was the promoter of Shepherd Hills. The subdivision was highly restricted and was located so as to be in great demand in recent years as a choice residential area. Recognition of its value as such was undoubtedly the prime motivating factor inducing Mr. Shepherd to subdivide and promote it as residential property. In the same area and immediately adjacent to Shepherd Hills was a tract (Shepherd Knolls) similarly blessed. Among the purchases made by Mrs. Shepherd, Shepherd Knolls was included, having been acquired by her in conjunction with her sister-in-law, Margaret Shepherd. According to Mr. Shepherd's testimony this particular tract was partially developed when his wife acquired it. It had roads around it and was desirably located scenically. Mrs. Shepherd turned down an offer for the entire tract and made additional improvements. Plans were made to divide it into lots to bring about better sales, obviously with knowledge of the demand for lots in that area. According to Mr. Shepherd in some sales of his wife's property by his salesmen they received a commission while in other instances they did not—evidently depending upon the amount of time and effort spent in bringing about the sale. He also admitted that his wife, through him, sometimes loaned money to his clients who had insufficient funds to make down payments on property they wished to buy from him. In September 1949 Mrs. Shepherd, Mr. Shepherd, and their son formed a building corporation whose business it was to build and finance new houses. Mrs. Shepherd was president and owned a block of the stock. According to Mr. Shepherd the plan was for him to erect houses on property owned by his wife. It also appears that Mr. Shepherd had a line of credit with several banks to enable him to make loans. For that purpose statements were filed listing separately the assets and proper-

ty holdings of his and Mrs. Shepherd. It is interesting to note that the listing for 1953 disclosed total assets for Mrs. Shepherd in excess of $122,000 and only $118,552 for her husband. In view of Mrs. Shepherd's activities, particularly the building venture, it would appear she also had an equal interest in these listings in order that credit be established in her own right. With appropriate deductions for the home place and other incidentals under her assets, her interests were still well above $100,000. In addition she held notes for loans to her husband for over $60,000, the practice of giving such notes having begun in recent years.

The Court wishes to point out that none of the facts enumerated, considered alone, were given controlling weight. However taken together the Court feels they offer ample proof that Mrs. Shepherd held her property for sales in the course of a business venture. In reaching this conclusion the Court considered it unnecessary to decide whether, as government counsel contend, the beneficial ownership of the property actually was in Mr. Shepherd and that the effect of their return was to separate for more favorable treatment his personal real estate sales by a simple transfer of title. Disposition of that question is rendered unnecessary in view of the clearly established facts. Regardless of what other incidents may be ascribed to the relationship and dealings between the taxpayers, the facts brought out at the trial are sufficient to show that Mrs. Shepherd intended to and did· hold and dispose of her property to customers as a business venture. Whether or not her husband be held to have a controlling interest in her property, at least the facts show she fully utilized and benefited from his peculiar knowledge as a dealer in real estate in her purchases and sales, gained access to potential buyers through his office facilities and salesmen, and utilized the services of both her husband and his subordinates in accomplishing sales, occasionally paying to such salesmen a commission. The details of the sales of the properties involved here and the testimony of Mr. Shepherd as to how sales of other property belonging to his wife were accomplished clearly demonstrates how his agency and sales force were used to bring about sales, with excellent profits, to customers who came seeking property.

As noted a person may engage in a business through others. Although Mrs. Shepherd became a member of a corporation whose purpose it was to build and sell houses, it does not appear that she had any connection with her husband's agency in selling or dealing in property except that which belonged to her. However, as to the property which she did own the facts show the existence of the principal and agent relationship between herself as principal and her husband and members of his agency as her agents, for without exception the members of that agency handled her sales and received substantial benefits therefrom in the form of occasional commissions to individual salesmen and in the form of income to which its owner, Mr. Shepherd, had unlimited access "for use in his business or whatever was needed."

Despite the relatively small number of sales the whole case indicates throughout that Mrs. Shepherd's property was looked upon and dealt with not as investment property but as a means for producing a relatively constant and substantial income "for her private estate." Constant utilization of the real estate office contacts, its sales force, purchase of Shepherd Knolls, development and division thereof into lots, formation of a corporation to deal in construction and sale of houses and lots, and the development of bank credit through asset listings are all pertinent considerations which partake of business activity. Their character as such is not outweighed by plaintiff's assertions that Mrs. Shepherd was a housewife, holds no real estate license, made no improvements to the vacant lots which she held, conducted no active ad-

vertisement or solicitation for sales, or by the assertion that to sustain the Commissioner's ruling would be to hold a wife to be engaging in the real estate business simply because her husband held that occupation.

▇▇ A person may have more than one occupation or business and may carry on a business through others. Fahs v. Crawford, 5 Cir., 161 F.2d 315. That Mrs. Shepherd personally exercised little control over the transactions of sale is of little consequence in view of the activity of those acting in her behalf. Neither is possession of a real estate license a prerequisite to the existence of a business for tax purposes. Blake v. Kavanagh, supra. Nor is the lack of systematic improvements to the property controlling where, as here, a majority of it consisted of vacant lots upon which upkeep and improvements were not necessary. Neither is the lack of active advertisement or solicitation all-important, for by taxpayer's own testimony there was no need for it. As Mr. Shepherd stated " * * * the reason we did not advertise the property * * * is that over the years there was a demand built up for it, a limited demand, a demand for that type property * * *." See San Jacinto Homes v. Commissioner, 1952 P–H T.C. Memorandum Decisions, par. 52,321 where the court said: "Although no sales campaign was conducted, it does not appear that solicitation was necessary because of the strong demand for housing." And Meagher v. Commissioner, 1952 P–H T.C. Memorandum Decisions, par. 53,-▇▇

188 where the court stated: "The fact that a sales force was not maintained is of no significance, since the record shows the existence of a seller's market and solicitation was unnecessary." In answer to the last mentioned argument it need only be said that whatever the reason for the Commissioner's ruling, the proof is sufficient to show Mrs. Shepherd was engaged in the real estate business and that fact is controlling upon the court as well as upon the parties to this suit.

▇ The Commissioner determined the profits from the sales in question to be ordinary gain and his decision is presumptively correct. The burden of overturning it rested upon the taxpayers. Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212; Old Mission Portland Cement Co. v. Helvering, 293 U.S. 289, 55 S.Ct. 158, 79 L.Ed. 367; Pearce v. Commissioner, 315 U.S. 543, 62 S.Ct. 754, 86 L.Ed. 1016. Plaintiffs herein have failed to carry the burden.

Giving full weight to the decided cases and after careful consideration of the facts, the Court finds the property involved was held primarily for sale to customers in the ordinary course of business so as to be excluded from the definition of capital assets under Section 117 of the Internal Revenue Code, 26 U.S.C.A., Section 117. The recovery sought is, therefore, denied.

This opinion will serve as the findings of fact and conclusions of law.

Order accordingly.